**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:10-cv-00131-MSK-KMT**

TANISHA TANKERSLEY,

     Plaintiff,

        v.

CONTINENTAL COLLECTION AGENCY,

     Defendant.

---

**PLAINTIFF'S OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**
**PURSUANT TO THE ACCEPTANCE OF OFFER OF JUDGMENT**

     **NOTICE IS HEREBY GIVEN** that Plaintiff, TANISHA TANKERSLEY, by and through her attorneys, KROHN & MOSS, LTD., hereby moves this Honorable Court for an award of $7,828.90 in reasonable attorneys' fees and costs pursuant to the terms of the accepted Offer of Judgment issued in this matter. The motion for attorneys' fees is based upon this notice, the memorandum of points and authorities, and the exhibits attached thereto, and all files, pleadings and records in this action. Furthermore, Plaintiff's counsel certifies that this motion complies with LR 7.1A as Plaintiff has attempted to meet/confer and resolve the issue of attorneys' fees with Defendant's counsel to no avail.

     Specifically, on November 3, 2010, Plaintiff's counsel delivered counsel's statement of services and a fee demand to Defendant's counsel. On November 10, 2010, Plaintiff's counsel sent a follow up to Defendant's counsel as no response had been received. Plaintiff's counsel then received a correspondence from Defendant's counsel with an offer for fees incurred and the rationale for the offer. Plaintiff's counsel reviewed

the offer and correspondence and prepared a response to Defendant's counsel rejecting the current offer for fees incurred.  On November 12, 2010, Plaintiff filed her Motion for Attorneys' Fees and Costs.

By:_____/s/ Nicholas J. Bontrager_____
Nicholas J. Bontrager
Krohn & Moss Ltd.
10474 Santa Monica Blvd. Suite 401
Los Angleles, CA 90025
T: 323-988-2400 x229
F: 888-755-0945
nbontrager@consumerlawcenter.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      **BACKGROUND**

On or about January 21, 2010, Plaintiff, by and through his attorneys Krohn &

Moss, Ltd. ("K&M"), brought suit pursuant to provisions of the Fair Debt Collection

Practices Act ("FDCPA") 15 U.S.C. 1692, *et seq.*,.  Plaintiff prayed for relief and for

statutory damages and all reasonable attorney's fees and costs incurred for Defendant's

violation of the FDCPA.

On or about October 27, 2010, Plaintiff filed notice of Defendant's recently

served Offer of Judgment pursuant to Federal Rule of Civil Procedure 68, in the amount

of $250.00 to satisfy Plaintiff's underlying claims, plus a specific reservation of the issue

of Plaintiff's costs and attorney's fees for a later determination by the Court.  Defendant's

Offer of Judgment stated specifically that Defendant offers to: "allow judgment to be

entered against it and in favor of Plaintiff, Tanisha Tankersley (the "Plaintiff"), on the

following terms: 1. Defendant will pay to Plaintiff, upon acceptance of this agreement,

the sum of Two Hundred Fifty dollars ($250.00). 2. Defendant will pay reasonable

attorney's fees and costs incurred by Plaintiff, to be determined by the court upon noticed

motion should the parties be unable to agree upon the amount of such fees and costs."

(See Defendant's Offer of Judgment, attached hereto as Exhibit "A").  Plaintiff filed her

Notice of Acceptance of Rule 68 Offer of Judgment on October 27, 2010.  (See Notice

attached hereto as Exhibit "B").

## II.   PLAINTIFF IS ENTITLED TO COSTS AND ATTORNEY'S FEES PURSUANT TO THE FDCPA.

The specific statutory language of the FDCPA, and the public policy considerations in support of this Act, entitle Plaintiff to the recovery of attorney's fees and costs in this matter.  15 U.S.C. §1692k(a) states:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

Pursuant to this specific language, the federal courts have long recognized the importance of the fee shifting provision of the FDCPA, as well as the public policies behind it.  In *Tolentino v. Friedman*, (7th Cir. 1995) the court affirmed that a separate award for costs and fees is mandatory.

> Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general. *Tolentino v. Friedman*, 46 F.3d 645, 651-652 (7th Cir.1995).

Plaintiff's entitlement to her reasonable costs and fees has been reaffirmed by the Ninth Circuit Court of Appeals as recently as April 2008 where the court once again ordered that the determination of costs and fees is mandatory by the district courts.  "The FDCPA's statutory language makes an award of fees mandatory.  The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008);  *see also Graziano v. Harrison*, 950 F.2d 107 (3d Cir.1991) (noting that the FDCPA mandates an award of attorney's fees as a means of fulfilling Congress's

intent that the Act should be enforced by debtors acting as private attorneys general).

The *Tolentino* court also noted Congress' specific intent to allow an individual plaintiff the ability to pursue an action where the burden of costs and fees would otherwise economically preclude this type of rights enforcement. *Tolentino* at 652 *citing City of Riverside v. Rivera*, 477 U.S. 561 (1986)). "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms and congress has determined that the public as a whole has an interest in the vindication of the statutory rights." *Id.* The court held similarly in *Camacho* when it rejected the district court's "flat fee" approach, and in its remand for further findings directed that "[T]he amount of [attorney's fees] must be determined on the facts of each case." *Camacho* at 978.[1] Further, in consumer protection cases, such as this one, the amount of attorneys' fees and costs is often higher than the underlying amount of damages recovered by the plaintiff. *See* Bryant v. TRW Inc., 689 F.2d 72, 80 (6th Cir. 1982) (upholding award under Fair Credit Reporting Act attorneys' fee award that exceeded amount of compensatory damages).

Thus, the FDCPA mandates that the recovery of Plaintiff's attorneys' fees and costs is integral to the success of the policy goals of the FDCPA. By virtue of this Court's entry of judgment against Defendant, Plaintiff has prevailed in this matter and should be awarded reasonable attorney's fees and costs as determined by this Court.

---

[1] "The [District] court concluded that "[w]here ... the attorneys seeking fees support their motion with materials that are substantially unchanged from those filed by them in numerous other cases ... it would be inappropriate to award fees on fees on an hourly basis," and instead, the court awarded a "flat award" of $500." *Camacho* at 976. However, the Ninth Circuit Court of Appeals rejected this approach and remanded for a case-by-case determination of attorney's fees.

**III.  PLAINTIFF IS ENTITLED TO HER COSTS AND ATTORNEYS' FEES
AS HER ACCEPTANCE OF DEFENDANT'S OFFER OF JUDGMENT
RENDERS HER THE PREVAILING PARTY IN THIS ACTION.**

"[I]n order to encourage private enforcement of the law . . . Congress legislated

that in certain cases prevailing parties shall recover their attorney's fees from the

opposing side. When a statute provides for such fees, it is termed a 'fee shifting' statute.

The FDCPA is one such statute, providing that any debt collector who fails to comply

with its provisions is liable in the case of any successful action ... [for] the costs of the

action, together with a reasonable attorney's fee as determined by the court." *Camacho* at

978 *citing Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir.2003) and 15 U.S.C. §

1692k(a)(3)).

In support of this Congressional mandate, federal appellate courts have long

upheld a plaintiff's recovery of attorney's fees and costs after the entry of judgment in

plaintiff's favor, such as in the case where he accepts an offer of judgment.  *See*, e.g.,

*Webb v. James*, 147 F.3d 617 (7th Cir. 1998) (awarding attorney fees under the

underlying statute after plaintiff accepted defendant's federal Rule 68 offer of judgment)

and *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830 (9th Cir. 1997) (same).[2]  For example,

the United States Ninth Circuit Court of Appeals has expressly held that an enforceable

private settlement agreement requiring the defendant to pay money to the plaintiff, where

the district court retains jurisdiction to determine fees, entitles the plaintiff to statutory

fees and costs as the prevailing party.  *See Barrios v. California Interscholastic*

---

[2] Although Defendant's Offer of Judgment expressly provides this Court with authority to
award attorney's fees and costs, had Defendant's Offer of Judgment been silent as to the
same, Plaintiff still would have been entitled to the recovery of fees and costs pursuant to
Rule 68.  *See Utility Automation 2000, Inc. v. Choctawhatchee Electric Cooperative,
Inc.*, 298 F.3d 1238, 1249 (11th Cir. 2002) (holding that the plaintiff was entitled to
attorney fees as the prevailing party notwithstanding the offer's silence as to fees).

*Federation*, 277 F.3d 1128 (9th Cir. 2002).

In *Barrios*, the plaintiff sued the defendant under the ADA seeking a broad range of monetary and injunctive relief. *Barrios* at 1136. During the course of litigation the parties entered into a private settlement agreement. *Id.* at 1133. The agreement in *Barrios* required the defendant to pay the plaintiff a relatively small sum of money without conceding liability and allowed *either* side to petition for attorney fees and costs as the prevailing party. *Id.* There, as here, the plaintiff filed a motion for attorney's fees and costs shortly after entering into the agreement. *Id.* The court found the plaintiff entitled to the recovery of attorney's fees and explained that "Given that Barrios can enforce the terms of the settlement agreement against the [defendant], the district court correctly concluded that Barrios was the 'prevailing party' in his civil rights litigation." *Id.* at 1134.

The United States Supreme Court has defined plaintiff as the "prevailing party" for purposes of the award of attorney's fees "if [the plaintiff] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see also Busche v. Burkee*, 649 F. 2d 509 (7th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981) ("[The] proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought."). Where sought, monetary relief constitutes at least "some of the benefit the parties sought in bringing the suit." *Id.* at 432 *citing Nadeau v. Helgemoe,* 581 F. 2d 275 (1st Cir. 1978); *see also Farrar v. Hobby*, 506 U.S. 103 (1992) (holding that even nominal damages suffice under the test that a party prevail on the merits of at least some of its claims).

7

In *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Resources, et al.*, 532 U.S. 598 (2001) the Court held that "enforceable judgments on the merits and court ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's [sic] fees). Where the legal relationship is materially altered as a result of a judicially enforceable settlement agreement, the plaintiff is entitled to prevailing party status, and an award of attorney's fees is a natural consequence. *See Buckhannon Board and Care Home,* 532 U.S. at 604. In this case, Plaintiff is the prevailing party and is entitled to attorney's fees as the district court is statutorily and contractually authorized to retain jurisdiction over the matter at hand.

In addition to the entry of judgment in her favor, Plaintiff also obtained considerable recovery on her claims by receiving $250.00 in damages plus payment of attorneys' fees and costs. Available to Plaintiff for Defendant's violation of the FDCPA are actual damages plus "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1592(a)(2)(A). When compared to the damages available under to the Fair Debt Collection Practices Act Collection Practices Act, Plaintiff was successful in advancing this case by receiving $250.00 plus costs and fees.

Plaintiff can, therefore, also be defined as the prevailing party by virtue of her success on a central issue of litigation as exhibited by the fact that she acquired primary relief sought, *i.e.*, monetary damages. *See Hensley*, 461 U.S. at 433. For the reason that where sought, monetary relief constitutes at least "some of the benefit the parties sought in bringing the suit," Plaintiff is afforded "prevailing party" status for purposes of the award of attorney's fees. Although, even per *Farrar* that nominal damages may suffice

for a plaintiff to be considering a prevailing party for the award of attorney's fees, Plaintiff obtained far greater value than that which may be deemed nominal as Plaintiff received $250.00 *in addition to attorney's fees and costs* to be determined by this Court.

By virtue of this Court's entry of judgment against Defendant, and Plaintiff's substantial recovery on her claims, Plaintiff has prevailed in this matter and should be awarded reasonable attorney's fees and costs as determined by this Court.

## IV.    PUBLIC POLICY SUPPORTS AN AWARD OF COSTS AND ATTORNEY'S FEES.

"The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.  Congress found such abuses by debt collectors to be serious and widespread." *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643, 653 (S.D.N.Y. 2006) *citing* 15 U.S.C. § 1692(e) and *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996).[3]   The fee-shifting provision contained in the FDCPA, therefore, enables consumers to vindicate their personal rights and while benefitting society in general, resulting in greater deterrence of fraudulent and deceptive business practices.

Further, the difficulty in private attorneys general actions, such as the FDCPA and similar state enacted statutes, is that the potential for recovery is not clear at the time the litigation is commenced unlike in personal injury actions.  *Bowers v. Transamerica Title*

---

[3] Pursuant to the express intent of Congress in enacting the FDCPA, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

*Insurance Company*, 675 P.2d 193, 204 (Wash. 1983).   Additionally, the amount in controversy is usually too small to induce an attorney to commence litigation on a percentage contingency.   Accordingly, "[T]he purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims."   *Majcher v. Laurel Motors, Inc.*, 287 Ill.App.3d 719, 680 N.E.2d 416 (Ill. Ct. App. 1997);   *See also Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 488 (Ky. Ct. App. 1978).   By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights.

Without a sufficient award of attorney's fees and costs, an entry of judgment for the consumer would simply not make the consumer whole as the average consumer would simply be unable to pay her attorney's fees.   This result would create a deterrent for the private bar to pursue an action for which Congress has so emphatically dictated the importance.   This sort of "chilling effect" would counter the purpose of the statute, which, when coupled with the provision awarding attorney's fees, "is to encourage consumers to file actions to vindicate their rights."   *Grove v. Huffman*, 262 Ill. App.3d 531, 539, 634 N.E. 2d 1184, 1190 (Ill. Ct. App. 1994).   The attorney's fees provision is in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs. *Id.* at 539.   As a result, public policy dictates that attorney's fees should be paid by the Defendant.

**V.     IN CONSUMER PROTECTION ACTIONS IT IS <u>NOT</u> APPROPRIATE TO ASSESS A FEE AWARD BASED UPON THE PROPORTIONALITY OF THE ATTORNEYS' FEES EXPENDED TO THE AMOUNT OF PLAINTIFF'S RECOVERY.**

Courts throughout the nation have recognized that in consumer actions, it is not appropriate to calculate an attorneys' fee award based upon the amount recovered by the plaintiff. The fact that the amount recovered by the plaintiff may be disproportionate to the amount of attorneys' fees sought does not make the fees expended unreasonable. As such, the fees awarded should not be reduced to maintain some ratio between the attorneys' fees and underlying compensatory damages. *See Bryant v. TRW*, 689 F.2d 72 (6th Cir. 1982); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1041-42 (3d Cir. 1996); *Jones v. Credit Bureau of Greater Garden City*, 1989 WL 134945 (D. Kan. 1989); and *Northrup v. Hoffman of Simsbury, Inc.*, 2000 WL 436612 (D. Conn. 2000).[4]

---

[4] *See also Goins v. JBC & Associates, P.C.*, 2006 WL 540332, at *3 (D. Conn. Mar. 6, 2006) (FDCPA plaintiff's counsel awarded $23,421.00 in fees and $895.19 in costs where underlying matter was settled for $1,500); *Dechert ex rel. Estate of Oyler v. The Cadle Co.*, 2004 WL 2999112 (S.D. Ind. Nov. 10, 2004) (FDCPA plaintiff awarded $54,391 in fees on a $1,000 statutory recovery); *Gradisher v. Check Enforcement Unit*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (attorney's fees award of $69,872.00 where plaintiff recovered FDCPA statutory damages of $1,000); *Armstrong v. Rose Law Firm, P.A.*, 2002 WL 31050583 (D. Minn. Sept. 5, 2002) (attorney's fee award of $43,180.00 where plaintiff recovered the maximum FDCPA statutory damages of $1,000); *Minnick v. Dollar Financial Group, Inc.*, Civ. No. 02-1291, 2002 WL 1023101, 52 Fed. R. Serv.3d 1347 (E.D. Pa. May 20, 2002) (consumer-plaintiff in FDCPA action awarded $7,208.50 in fees and costs after accepting $2,000 offer of judgment; and *Norton v. Wilshire Credit Corp.*, 36 F.Supp. 2d 216 (D.N.J. 1999) (court awarded $57,000 in fees for $5,800 award to plaintiff in FDCPA action).

## VI.   THE RATES SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE AND COMMENSURATE WITH THEIR EXPERIENCE IN THE FIELD OF CONSUMER PROTECTION.

Plaintiff seeks an award of attorneys' fees and costs in the amount of $7,828.90 that is comprised of 21.4 hours of attorney time at hourly rates ranging from $225.00 per hour to $394.00 per hour and 16.5 hours of paralegal and clerk time at $125.00 per hour. (See Statement of Services attached hereto and marked as Exhibit "C").   Specifically, Plaintiff seeks to recover attorney's fees for Adam J. Krohn at a rate of $394.00 per hour for 0.6 hours, Nicholas J. Bontrager at a rate of $250.00 per hour for 15.0 hours, attorney's fees for Stephen Harkess at a rate of $250.00 per hour for 3.0 hours, and attorney's fees for Christopher G. Addy at a rate $225.00 per hour for 2.8 hours.[5]   The hourly rates of Plaintiff's attorneys delineated in Plaintiff's Statement of Services are commensurate with the experience and training of each attorney who provided services in this matter.   These rates are also supported by the 2007 Consumer Law Attorney Fee Survey, the 2007 National Law Journal Survey, the United States Attorney's Office and the "Laffey Matrix," as well as the affidavits of other consumer advocates.

### A.   The experience of the attorneys at K&M provides support for the hourly rates requested.

The experience of the attorneys that worked on behalf of Plaintiff is detailed in the biography statement of Plaintiff's attorneys attached hereto as Group Exhibit "D" and further supported by the declarations of Krohn & Moss, Ltd. attorneys contained within Group Exhibit "E."

---

[5] Adam J. Krohn, as the managing partner of Krohn & Moss, Ltd., and Christopher G. Addy, as an associate attorney of Krohn & Moss, Ltd., participated in this case as consulting attorneys only.

**B.     The rates sought by K&M are reasonable as evidenced by the 2007 Consumer Law Attorney Fee Survey.**

In the fall 2007, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection by an "attorney's years in practice, location of practice, and size of firm." (See 2007 Consumer Law Attorney Fee Survey attached hereto as Exhibit "F").   The attached survey supports the billing rates requested as the average billing rate data in the survey, grouped by both region and years in practice, is consistent with those rates.   For example, on page seven it is shown that the average billing rate for firms with more than 5 attorneys practicing in Colorado is $275.00 per hour.   This is substantially more than the rate requested for Mr. Bontrager, Mr. Harkess and Mr. Addy at only $250.00 and $225.00 per hour respectively.   Further, data collected for the "west" region arranged by years in practice without regard to firm size (survey page 18) shows the average rate for attorneys with 11-15 years in practice to be $325.00 per hour, attorneys with 6-10 years in practice to be $250.00 per hour, attorneys practicing 3-5 years to be $242.00 per hour, and attorneys practicing 1-3 years to be $275.00 per hour.   As such, the rates requested by Plaintiff's attorneys are commensurate with other consumer attorneys' billing rates, indexed by both region and years in practice, and therefore, should be determined by this Court to be reasonable.

**C.     The Rates Sought by K&M are Commensurate with the Mean Billing Rates Compiled in *The National Law Journal's* 2007 Billing Survey for Associates and Partners in Law Firms Throughout the Country Including Colorado.**

*The National Law Journal's* 2007 Billing Survey also demonstrates the reasonableness of the rates as sought by Plaintiff.   For twenty-five (25) years, *The National Law Journal* has been providing the legal community with news, commentary

and analysis on lawyers and the law.  See *The National Law Journal's Website* at http://www.law.com/jsp/nlj/utility/about.jsp.  *The National Law Journal* provides timely legal information of national importance to attorneys concerning federal circuit court decisions, verdicts, practitioners' information, legislative issues, and legal news for business and private sectors.  *Id.*  *The National Law Journal's* 2007 survey of billing rates of the largest U.S. law firms provides the High, Average and Low rates for partners and associates at over 100 firms.

As evidenced by taking an average of the Denver law firms surveyed by *The National Law Journal*, the rates charged by Krohn & Moss, Ltd. are commensurate, if not lower, then average rates charged by other firms in Colorado:

- Average Partner Billing Rate Low:  $260/hr - $285/hr

- Average Partner Billing Rate High:  $585/hr - $675/hr

- Average Partner Billing Rate Mean:  $385/hr - $410/hr

- Average Associate Billing Rate Low: $170/hr - $195/hr

- Average Associate Billing Rate High: $270/hr - $420/hr

- Average Associate Billing Rate Mean:  $218/hr - $265/hr

These rates reflect the growing increase in rates as charged by law firms in the Denver area.  (See Article from National Law Journal attached hereto as Exhibit "G").  Commenting on the Survey, Leigh Jones of *The National Law Journal* wrote in her December 11, 2007 article for the *Journal*, "billing rates shot up in 2007, with approximately three-quarters of the law firms that participated in *The National Law Journal's* annual survey boosting the amounts they charged for partner and associate

services."

**D.  The rates sought by K&M are reasonable as evidenced by the United States Attorney's Office and the "Laffey Matrix."**

The attorneys' fees rates requested by Plaintiff as detailed in Plaintiff's Statement of Services are commensurate with the prevailing rates for attorneys that practice federal law.  As the case at bar was filed pursuant to a federal remedial statute, the FDCPA, rates charged by other attorneys practicing federal law may be compared to determine an appropriate rate.  *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983).  In *Laffey*, the court compared rates of attorneys practicing federal claims with fee-shifting provisions to reach a hybrid rate.  *Id*.  The court's analysis in *Laffey* was taken one step further by the Civil Division for the United States Attorney's Office to reflect how rates have changed over the years due to inflation.  In doing so, the United States Attorney's office created the "Laffey Matrix." As demonstrated by the "Laffey Matrix" the rates sought by Plaintiff's attorneys herein are commensurate with recognized rates for attorneys' with similar experience.  The "Laffey Matrix" when coupled with the affidavits presented by Plaintiff and detailed biographies of the attorneys at Krohn & Moss, Ltd. provides conclusive evidence that the rates sought by Plaintiff's attorneys are reasonable.[6]  The "Laffey Matrix" is incorporated into this Fee

---

[6] This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.*, 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does *not* apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates"

Petition in its entirety:



**Civil Division - LAFFEY MATRIX 2004-2009**

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 |
|---|---|---|---|---|---|
| 20+ years | 390 | 405 | 425 | 440 | 465 |
| 11-19 years | 345 | 360 | 375 | 390 | 410 |
| 8-10 years | 280 | 290 | 305 | 315 | 330 |
| 4-7 years | 225 | 235 | 245 | 255 | 270 |
| 1-3 years | 185 | 195 | 205 | 215 | 225 |
| Paralegals & Law Clerks | 110 | 115 | 120 | 125 | 130 |

The Laffey Matrix clearly illustrates that the rates charged by Krohn & Moss, Ltd. are commensurate with the rates that could have been charged according to United States Attorney's Office.   Based on the "Laffey Matrix" and the other authority provided to this Court in Plaintiff's Petition for Attorneys' fees, the hourly rates sought by Plaintiff's attorneys are reasonable.

      **E.**    **The declarations of consumer protection attorneys nationwide, including Colorado, provide support for the hourly rates and time requested by Plaintiff.**

Steven Solomon, a consumer protection attorney licensed in California, Craig Thor Kimmel, a consumer protection attorney licensed in Pennsylvania, Matthew Osborne, a consumer protection attorney licensed in Colorado, and Holli M. Colburn, a litigation attorney licensed in Colorado, are familiar with the claims brought in

---

(1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983).

Plaintiff's Complaint and have reviewed the hourly rates and time entries of Plaintiff's attorneys. All four attorneys have attested that the rates and time incurred by Plaintiff's attorneys are reasonable (See supporting declarations attached as Exhibit "H"). All four attorneys have a wealth of experience in trial and appellate advocacy, and Mr. Solomon and Mr. Kimmel have displayed this expertise within the legal community by publishing articles in various legal journals. All four attorneys have represented numerous consumers and clients throughout the nation. Therefore, based on the experiences of Mr. Solomon, Mr. Kimmel, Mr. Osborne  and Ms. Colburn in the area of consumer protection and general litigation, it is clear that they have obtained the experience and qualifications necessary to present their opinion to this Court as to the reasonableness of Plaintiff's attorneys' fees.

## VII.   IT IS DEFENDANT'S BURDEN TO ESTABLISH ANY REDUCTION IN ATTORNEYS' FEES.

It has generally been recognized in fee-shifting statutes that "a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir.  1989), cert. denied, 493 U.S. 1071 (1990) (awarding $5,500,000 in fees on  $3 recovery) cited in *Grant v. Martinez*, 973 F.2d  96, 101 (2d Cir. 1992).[7] *See Laura B. Bartell, Taxation of Costs and  Awards of Expenses in Federal Court*, 101 F.R.D.  553, 560-62 (1984).   The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. *See*, e.g, *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987

---

[7] The lodestar figure represents reasonable hours times reasonable rate.  *Blanchard v. Bergeron*, 103 L.Ed. 2d 67, 76 (1989) *quoting Pennsylvania v. Delaware Valley  Citizens' Council for Clean Air*, 478 U.S. 546, 656 (1986).

F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); and *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").   Accordingly, unless Defendant is able to meet its burden, this Court should accept Plaintiff's lodestar and award the attorneys' fees and costs sought.

**VIII.   PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED.**

Plaintiff seeks $400.00 in litigation costs incurred by Plaintiff.   This amount includes the cost of filing ($350.00) and serving the Complaint ($50.00) (See Invoice for Service of Process attached as Exhibit "I").

**IX.   CONCLUSION.**

Plaintiff was represented free of charge by Krohn & Moss, Ltd., a consumer protection law firm that has represented thousands of consumers to date.   Pursuant to the public policy considerations behind the fee-shifting provision of the FDCPA as detailed above, Plaintiff requests that this Honorable Court award Plaintiff's attorneys' fees and costs in the amount of $7,828.90.

**Respectfully Submitted,**

By:____/s/ Nicholas J. Bontrager____
       Nicholas J. Bontrager
       Krohn & Moss Ltd.
       10474 Santa Monica Blvd. Suite 401
       Los Angleles, CA 90025
       T: 323-988-2400 x229
       F: 888-755-0945
       nbontrager@consumerlawcenter.com

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-CV-00131-MSK-KMT

TANISHA TANKERSLEY,

                Plaintiff,

v.

CONTINENTAL COLLECTION AGENCY,

                Defendant.

_____

**DEFENDANT'S OFFER OF JUDGMENT**
_____

        Pursuant to Fed.R.Civ.P. 68, Defendant, Continental Collection Agency (the "Defendant"), by and through its counsel, Paul Spivak, offers to allow judgment to be entered against it and in favor of Plaintiff, Tanisha Tankersley (the "Plaintiff"), on the following terms:

1. Defendant will pay to Plaintiff, upon acceptance of this agreement, the sum of Two Hundred Fifty dollars ($250.00).

2. Defendant will pay reasonable attorney's fees and costs incurred by Plaintiff, to be determined by the court upon noticed motion should the parties be unable to agree upon the amount of such fees and costs.

Dated this 27th day of October, 2010.

                           Respectfully submitted,

                           s/ Paul Spivak

           By:          _____

                           **Paul Spivak**

1720 S. Bellaire St., Suite 801
Denver, CO 80222
Telephone: (303) 691-9570
FAX: (303) 691-9433
E-mail: paul@contcollections.com
Attorney for Defendant

**Certificate of Service**

I hereby certify that **OFFER OF JUDGMENT**, was served this 27th day of  October, 2010, via email, and by placing same in the United States Mail, first-class postage prepaid, addressed to:

Nicholas J. Bontrager, Esq.
Krohn & Moss, Ltd.
10474 Santa Monica Blvd., Ste. 401
Los Angeles, CA  90025
Nbontrager@consumerlawcenter.com


s/ Paul Spivak
_____

**Paul Spivak**

**EXHIBIT B**

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-00131-MSK-KMT

TANISHA TANKERSLEY,

     Plaintiff,

          v.

CONTINENTAL COLLECTION AGENCY,

     Defendant.

---

## NOTICE OF ACCEPTANCE OF OFFER OF JUDGMENT

---

**TO:   DEFENDANT AND ITS ATTORNEYS OF RECORD:**

Plaintiff hereby accepts Defendant's Rule 68 Offer of Judgment served herein in the above matter, and attached hereto as <u>Exhibit A</u>.

RESPECTFULLY SUBMITTED,

/s/:   Nicholas J. Bontrager__
Nicholas J. Bontrager
Krohn & Moss, Ltd.
10474 Santa Monica Boulevard, Suite 401
Los Angeles, CA  90025
Tel: 323-988-2400 x229
Fax: 866-802-0021
nbontrager@consumerlawcenter.com
Attorney for Plaintiff

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-CV-00131-MSK-KMT

TANISHA TANKERSLEY,

                    Plaintiff,

v.

CONTINENTAL COLLECTION AGENCY,

                    Defendant.

_____

**DEFENDANT'S OFFER OF JUDGMENT**
_____

        Pursuant to Fed.R.Civ.P. 68, Defendant, Continental Collection Agency (the "Defendant"), by and through its counsel, Paul Spivak, offers to allow judgment to be entered against it and in favor of Plaintiff, Tanisha Tankersley (the "Plaintiff"), on the following terms:

1. Defendant will pay to Plaintiff, upon acceptance of this agreement, the sum of Two Hundred Fifty dollars ($250.00).

2. Defendant will pay reasonable attorney's fees and costs incurred by Plaintiff, to be determined by the court upon noticed motion should the parties be unable to agree upon the amount of such fees and costs.

Dated this 27th day of October, 2010.


                            Respectfully submitted,

                            s/ Paul Spivak

          By:    _____

                            **Paul Spivak**

> 1720 S. Bellaire St., Suite 801
> Denver, CO 80222
> Telephone: (303) 691-9570
> FAX: (303) 691-9433
> E-mail: paul@contcollections.com
> Attorney for Defendant

**Certificate of Service**

I hereby certify that **OFFER OF JUDGMENT**, was served this 27th day of October, 2010, via email, and by placing same in the United States Mail, first-class postage prepaid, addressed to:

Nicholas J. Bontrager, Esq.
Krohn & Moss, Ltd.
10474 Santa Monica Blvd., Ste. 401
Los Angeles, CA 90025
Nbontrager@consumerlawcenter.com

s/ Paul Spivak

_____

**Paul Spivak**

# PROOF OF SERVICE

I, Nicholas J. Bontrager, state the following:

I am employed in Los Angeles, California; I am over the age of 18 and am not a party to this action; my business address is 10474 Santa Monica Blvd., Suite 401, Los Angeles, CA 90025. On October 27, 2010, I served the following documents:

**NOTICE OF ACCEPTANCE OF RULE 68 OFFER OF JUDGMENT**

On the parties listed below:

Paul Spivak
Continental Collection Agency
1720 S. Bellaire St., Suite 801
Denver, CO 80222
Tel: 303-691-9570  Fax: 303-691-9433
paul@contcollections.com

By the following means of service:

[X]  **BY ELECTRONIC MAIL:** I transmitted the document(s) listed above electronically to the e-mail addresses listed above.

[X]  POSTAL MAIL: I delivered the above document listed above via U.S. Postal Mail with postage pre-paid.

[X]  **STATE:** I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on October 27, 2010, at Los Angeles, California.

By: _____/s/ Nicholas J. Bontrager____

**EXHIBIT C**

**TANKERSLEY, TANISHA V. CONTINENTAL COLLECTIONS**

**PURSUANT TO THE GUIDELINES AS PER THE ATTACHED *CONSUMER LAW ATTORNEY FEE SURVEY AND THE EXPERIENCE OF PLAINTIFF'S ATTORNEYS*, PLAINTIFF CALCULATES ATTORNEYS' FEES AS FOLLOWS:**

| ATTORNEY | HOURS | RATE | TOTAL |
|----------|-------|------|-------|
| Adam J. Krohn | 0.6 | $394 | $236.40 |
| Nicholas J. Bontrager | 15.0 | $250 | $3,750.00 |
| Stephen Harkess | 3.0 | $250 | $750.00 |
| Christopher G. Addy | 2.8 | $225 | $630.00 |
| Paralegal/Clerk | 16.5 | $125 | $2,062.50 |

**TOTAL ATTORNEYS' FEES:**    $ 7,428.90
**COST OF FILING COMPLAINT:**    $    350.00
**COST OF SERVICE:**    $      50.00

**TOTAL FEES AND COSTS:**    $7,828.90

**Tankersley, Tanisha v. Continental Collections**
Matter ID: CO0051F10NK

| Date | Timekeeper | Description | Time (hrs) |
|------|-----------|-------------|-----------|
| Wed Nov 10,2010 | Nicholas J Bontrager | | 2.30 |
| | | Prepare Petition for Attorneys Fees and Costs; Review entire file and made notes as to factual background and procedure of case (.4); Reviewed local rules and judge's motion practice procedures (.2); Drafted motion for fees and costs pursuant to offer of judgment (.5); Drafted attorney declarations (.3); Drafted consumer advocate declarations (.2); Assembled attorney biographies (.1); Reviewed and complied exhibits (.2); Reviewed and revised entire motion with exhibits as needed (.4); Sent draft to S.Cohen to review; Bontrager, Nick / Attorney | |
| Wed Nov 10,2010 | Nicholas J Bontrager | | 0.10 |
| | | Received correspondence from counsel regarding fee demand; Reviewed correspondence and offer; Reviewed file and time; Prepared brief response to counsel rejecting offer; Memo to file to prepare and file petition; Bontrager, Nick / Attorney | |
| Wed Nov 10,2010 | Nicholas J Bontrager | | 0.10 |
| | | Prepared follow up correspondence to counsel regarding fee demand in effort to resolve issue of fees and costs; Memo to file; Bontrager, Nick / Attorney | |
| Wed Nov 3,2010 | Nicholas J Bontrager | | 0.10 |
| | | Delivered redacted timesheets and time chart to counsel with fee demand in effort to resolve issue of fees and costs; Memo to file; Bontrager, Nick / Attorney | |
| Mon Nov 1,2010 | Nicholas J Bontrager | | 0.10 |
| | | Received and reviewed ECF notice and clerk's entry of judgment; Reviewed; Memo to file; Bontrager, Nick / Attorney | |
| Mon Nov 1,2010 | Nicholas J Bontrager | | 0.80 |
| | | Prepare time sheets and Time Summary for use in Fee Petition; Reviewed file and pulled timesheets (.2); Reviewed all timesheets and made notes as to redactions needed for confidentiality (.3); Redacted time entries as needed (.2); Delivered timesheets to S.Cohen with memo to review for adequate redaction of confidential/privileged information (.1); Memo to file; Bontrager, Nick / Attorney | |
| Wed Oct 27,2010 | Nicholas J Bontrager | | 0.70 |
| | | File Notice of Acceptance of Offer of Judgment; Received and reviewed offer of judgment (.1); Called client and discussed offer (.2); Confirmed acceptance of offer via email with client (.1); Prepared notice of acceptance (.2); E-filed with court (.1); Memo to file; Bontrager, Nick / Attorney | |
| Tue Oct 26,2010 | Nicholas J Bontrager | | 0.10 |
| | | Received and reviewed correspondence from counsel; Reviewed; Prepared response and included redacted raw time to aid in resolution of claim for attorneys fees incurred; Bontrager, Nick / Attorney | |
| Tue Oct 26,2010 | Nicholas J Bontrager | | 0.10 |
| | | Received and reviewed correspondence from counsel; Reviewed; Prepared response; Bontrager, Nick / Attorney | |
| Tue Oct 26,2010 | Nicholas J Bontrager | | 0.10 |
| | | Received and reviewed correspondence from counsel in response to demand; Reviewed; Prepared response; Bontrager, Nick / Attorney | |
| Tue Oct 26,2010 | Nicholas J Bontrager | | 0.40 |
| | | Discussed deposition with client and potential settlement (.3); Prepared correspondence to counsel with notice of unavailability for depositions and provided response to recent offer from Defendant and made counter demand as per client's authority (.1); Memo to file; Bontrager, Nick / Attorney | |
| Tue Oct 26,2010 | Karen Eisenberg | | 0.20 |
| | | Call client to confirm attendance at upcoming deposition and confirm meeting date prior; Informed by client and father of unavailability; Reported to attorney; Eisenberg, Karen / Paralegal | |
| Wed Oct 20,2010 | Nicholas J Bontrager | | 0.30 |

| Date | Name / Description | Hours |
|---|---|---|
| | Received and reviewed deposition notices for client and father; Reviewed in full; Updated case calendar with dates/times; Memo to file to notify client and father; Bontrager, Nick / Attorney | |
| Wed Oct 20,2010 | Nicholas J Bontrager | 0.10 |
| | Received and reviewed follow up correspondence from counsel regarding depositions, discovery and potential settlement; Memo to file; Bontrager, Nick / Attorney | |
| Mon Oct 18,2010 | Nicholas J Bontrager | 0.10 |
| | Prepared response to counsel regarding rescheduling of depositions; Memo to file; Bontrager, Nick / Attorney | |
| Mon Oct 18,2010 | Nicholas J Bontrager | 0.10 |
| | Received and reviewed email correspondence from counsel seeking to reschedule depositions; Memo to file; Bontrager, Nick / Attorney | |
| Thu Oct 14,2010 | Nicholas J Bontrager | 0.10 |
| | Received and reviewed email correspondence from counsel confirming time to respond; Memo to file; Bontrager, Nick / Attorney | |
| Wed Oct 13,2010 | Nicholas J Bontrager | 0.10 |
| | Received email correspondence from counsel with offer and follow up to Rule 37 correspondence; Reviewed; Prepared response to counsel requesting time to respond; Memo to file; Bontrager, Nick / Attorney | |
| Wed Oct 13,2010 | Nicholas J Bontrager | 0.10 |
| | Received email correspondence from counsel; Reviewed; Prepared response; Memo to file; Bontrager, Nick / Attorney | |
| Tue Oct 12,2010 | Nicholas J Bontrager | 0.10 |
| | Prepared correspondence to counsel with available dates for client's and father's deposition; Memo to file; Bontrager, Nick / Attorney | |
| Tue Oct 12,2010 | Karen Eisenberg | 0.20 |
| | Spoke with client and father regarding dates for deposition; Report to attorney with dates; Eisenberg, Karen / Paralegal | |
| Mon Oct 11,2010 | Nicholas J Bontrager | 0.10 |
| | Received and reviewed follow up email correspondence from counsel for deposition dates; Memo to file; Bontrager, Nick / Attorney | |
| Mon Oct 11,2010 | Karen Eisenberg | 0.20 |
| | Left message for client regarding availability for deposition; Eisenberg, Karen / Paralegal | |
| Wed Oct 6,2010 | Nicholas J Bontrager | 0.20 |
| | Received email correspondence from counsel requesting dates for depositions of Client and father; Reviewed; Spoke with paralegal about obtaining dates from client; Memo to file; Bontrager, Nick / Attorney | |
| Tue Oct 5,2010 | Imma Almourzaeva | 3.00 |
| | Review phone records for calls to Plaintiff and her father; Review complaint for numbers and date range; Reviewed 300 pages of phones record; searched for numbers dialed; Highlighted; Reported to attorney with results; Almourzaeva, Imma / Legal Assistant | |
| Mon Oct 4,2010 | Imma Almourzaeva | 0.30 |
| | Called Qwest to request PDF of subpoena documents; Stayed on the phone for 15 minutes; Got information needed from Qwest and discussed with attorney; Almourzaeva, Imma / Legal Assistant | |
| Mon Oct 4,2010 | Imma Almourzaeva | 0.20 |
| | Placed call to Qwest to see if PDF of phone records is available; Left message for return call; Almourzaeva, Imma / Legal Assistant | |
| Thu Sep 16,2010 | Karen Eisenberg | 1.40 |
| | Finalized Plaintiff's Response to Interrogatories; Reviewed and revised responses as per discussions with client and attorney; Reviewed final verified responses with attorney; | |
| Thu Sep 16,2010 | Karen Eisenberg | 0.90 |
| | Finalized Plaintiff's Response for Request for Production; Reviewed and revised as per discussions with client and attorney; Reviewed final verified responses with attorney; Served onto counsel; Eisenberg, Karen / Paralegal | |
| Thu Sep 16,2010 | Karen Eisenberg | 1.20 |
| | Reviewed Discovery Responses with client over phone; Made notes as to revisions needed after discussion of each response with client; Eisenberg, Karen / Paralegal | |

| | | |
|---|---|---|
| Fri Sep 10,2010 | Karen Eisenberg | 1.30 |
| | Prepared Draft Responses to Defendant's Interrogatories; Discussed all requests with client and made notes as to responses to each request; Prepared draft responses to each request and delivered to client to review and verify; Eisenberg, Karen / Paralegal | |
| Fri Sep 10,2010 | Karen Eisenberg | 1.10 |
| | Prepared Draft Responses to Defendants Request for Production; Discussed requests with client via telephone; Made notes as to responses to each request; Drafted initial responses to requests and delivered to client to review and verify; Eisenberg, Karen / Paralegal | |
| Tue Aug 31,2010 | Karen Eisenberg | 0.20 |
| | Emailed discovery requests to Plaintiff for review prior to conversation regarding responses; | |
| Tue Aug 31,2010 | Christopher G Addy | 0.90 |
| | Obtain client authorization for phone record release to send to Carrier; Locate phone number and telephone call to carrier to discuss (.4); Prepare authorization from (.3); Email to client (.2); Addy, Christopher / Attorney | |
| Mon Aug 23,2010 | Nicholas J Bontrager | 0.40 |
| | Received Discovery request to Plaintiff; Review all requests and prepare memo to file for their execution; Bontrager, Nick / Attorney | |
| Mon Aug 23,2010 | Christopher G Addy | 0.10 |
| | Review phone authorization request from phone carrier; Memo to file to obtain authorization from client and send; Addy, Christopher / Attorney | |
| Mon Aug 16,2010 | Christopher G Addy | 0.90 |
| | Issue Subpoena for Client's Phone records; Telephone call to client to obtain several phone numbers defendant was calling (.2); Prepare subpoena request for client's fathers work phone (.2); Prepare subpoena for clients cell phone (.2); prepare subpoena for clients home phone (.2); Prepare documents for service (.1); Addy, Christopher / Attorney | |
| Fri Jul 30,2010 | Nicholas J Bontrager | 0.10 |
| | Received and reviewed defendant's supplemental disclosures; Reviewed; Memo to file; Bontrager, Nick / Attorney | |
| Thu Jul 29,2010 | Nicholas J Bontrager | 0.70 |
| | Received Collectors Response to Discovery; Reviewed responses to admissions (.2); Reviewed responses to interrogatories (.2); Reviewed responses to production request (.3); Memo to file regarding future need for more clarity in their response per rule 37; Bontrager, Nick / Attorney | |
| Wed Jun 16,2010 | Nicholas J Bontrager | 0.20 |
| | Received email correspondence from counsel regarding discovery requests; Reviewed email; Reviewed file; Prepared response; Bontrager, Nick / Attorney | |
| Mon Jun 14,2010 | Nicholas J Bontrager | 0.20 |
| | Received email correspondence from counsel regarding discovery requests; Reviewed email; Provided counsel with electronic copy; Allowed for 7 day extension; Updated case calendar; Memo to file; Bontrager, Nick / Attorney | |
| Mon May 10,2010 | Imma Almourzaeva | 0.50 |
| | Prepare Discovery to Defendant; Prepared request for admissions (.1); Prepared request for production (.1); Prepared interrogatories (.1); Served counsel with requests (.2); | |
| Thu May 6,2010 | Nicholas J Bontrager | 0.20 |
| | Reviewed initial disclosures drafted prior to serving onto counsel; Reviewed; Made notes as to revisions needed; Approved to serve once revisions are made; Memo to file; Bontrager, Nick / Attorney | |
| Thu May 6,2010 | Christopher G Addy | 0.90 |
| | Prepare Rule 26a federal disclosures; review client information sheet and file (.4); Prepare disclosure identifying all witnesses and documents (.3); Prepare documents for disclosure (.1); Draft correspondence to opposing counsel with disclosures (.1); Addy, Christopher / Attorney | |
| Wed May 5,2010 | Nicholas J Bontrager | 0.20 |
| | Received and reviewed ECF notice and order setting final pre-trial conference; Reviewed order in full; Updated case calendar; Memo to file; Bontrager, Nick / Attorney | |
| Mon May 3,2010 | Nicholas J Bontrager | 0.20 |
| | Received and reviewed local counsel report from settlement conference; Reviewed; Memo | |

| | | |
|---|---|---|
| | to file; Bontrager, Nick / Attorney | |
| Mon May 3,2010 | Nicholas J Bontrager | 0.20 |
| | Received and reviewed ECF notice and scheduling order; Reviewed in full; Updated case calendar; Memo to file; Bontrager, Nick / Attorney | |
| Mon May 3,2010 | Nicholas J Bontrager | 0.10 |
| | Received email correspondence from counsel regarding potential settlement; Reviewed; Reviewed file; Prepared response; Memo to file; Bontrager, Nick / Attorney | |
| Mon May 3,2010 | Nicholas J Bontrager | 0.20 |
| | Received and reviewed Defendant's initial disclosures; Reviewed in full; Memo to file; Bontrager, Nick / Attorney | |
| Fri Apr 30,2010 | Stephen Harkess | 3.00 |
| | Settlement and Scheduling Conference with Client and Magistrate at USDC Denver; Harkess, Stephen / Attorney | |
| Thu Apr 29,2010 | Nicholas J Bontrager | 0.40 |
| | Call local counsel to discuss settlement and scheduling conference; Reviewed file (.2); Discussed case with counsel and provided additional documentation (.2); Memo to file; Bontrager, Nick / Attorney | |
| Sat Jan 0,1900 | Nicholas J Bontrager | 0.30 |
| | Call client regarding settlement conference; Confirmed client's attendance; Discussed procedure of conference and potential settlement; Sent confirming email with information regarding conference; Memo to file; Bontrager, Nick / Attorney | |
| Tue Apr 27,2010 | Nicholas J Bontrager | 0.20 |
| | Called client to confirm attendance at mediation; Number disconnected; Sent email; Reported to partner; Memo to file; Bontrager, Nick / Attorney | |
| Tue Apr 27,2010 | Nicholas J Bontrager | 0.10 |
| | Confirm counsel's appearance at settlement conference in writing; Memo to file; Bontrager, | |
| Fri Apr 23,2010 | Nicholas J Bontrager | 0.20 |
| | File Proposed Scheduling Order; Received approval from counsel to file proposed order; E-filed with court; Delivered copy in editable format to chambers; Memo to file; Bontrager, | |
| Thu Apr 22,2010 | Nicholas J Bontrager | 0.30 |
| | Received and reviewed email correspondence from counsel with revisions for scheduling order; Reviewed email; Revised report; Sent to counsel with correspondence; Memo to file; Bontrager, Nick / Attorney | |
| Mon Apr 19,2010 | Nicholas J Bontrager | 0.60 |
| | Prepared Proposed Scheduling Order; Reviewed order (.1); Reviewed file and all pleadings (.2); Drafted report (.2); Reviewed and revised (.1); Sent to counsel to review; Memo to file; Bontrager, Nick / Attorney | |
| Mon Apr 19,2010 | Nicholas J Bontrager | 0.90 |
| | Submit Confidential Settlement Statement to Chambers and Counsel; Reviewed order (.1); Reviewed file and all pleadings (.2); Drafted statement (.3); Reviewed and revised (.1); Sent copy to chambers via email (.1); Sent copy to counsel via email (.1); Memo to file; Bontrager, Nick / Attorney | |
| Fri Apr 16,2010 | Nicholas J Bontrager | 0.20 |
| | Contact Hoffman & Pomerantz and secure counsel for settlement conference in Denver; Prepared correspondence with outline of case and documentation; Sent to Hoffman & Pomerantz; Memo to file; Bontrager, Nick / Attorney | |
| Tue Apr 13,2010 | Nicholas J Bontrager | 0.30 |
| | Offer from counsel; Reviewed offer; Reviewed file; Called client; Sent email with offer and analysis; Memo to file to respond to counsel after consult with client; Bontrager, Nick / Attorney | |
| Wed Apr 7,2010 | Nicholas J Bontrager | 0.50 |
| | Received and reviewed Answer from defendant; Reviewed side by side with complaint and drafted brief memo on denials; Review affirmative defenses; Update service links in Amicus; Bontrager, Nick / Attorney | |
| Tue Apr 6,2010 | Nicholas J Bontrager | 0.30 |
| | Received and reviewed email correspondence from counsel; Reviewed correspondence; Reviewed file; Prepared response to counsel; Memo to file; Bontrager, Nick / Attorney | |
| Mon Mar 15,2010 | Jennifer Durso | 0.20 |
| | Called and Prepared follow up email to client regarding upcoming settlement conference; | |

| | Saved email to client file; Durso, Jennifer/Legal Assistant | |
|---|---|---|
| Thu Mar 4,2010 | Jennifer Durso | 0.30 |
| | Researched and hired Process Server; Emailed documents to be served and saved to client's file; Durso, Jennifer / Legal Assistant | |
| Wed Mar 3,2010 | Karen Eisenberg | 0.20 |
| | Received status request from client; Reviewed file; Replied and saved to file; Eisenberg, Karen / Paralegal | |
| Wed Feb 3,2010 | Karen Eisenberg | 0.20 |
| | Received email from client regarding status of case; Reviewed file and responded; | |
| Wed Jan 27,2010 | Nicholas J Bontrager | 0.20 |
| | Received and reviewed order referring case to Judge Tafoya; Review order; Updated contacts in file; Memo to file; Bontrager, Nick / Attorney | |
| Wed Jan 27,2010 | Nicholas J Bontrager | 0.30 |
| | Received and reviewed orders setting scheduling conference and settlement conference; Reviewed; Updated case calendar with hearing date and all deadlines; Memo to file; Bontrager, Nick / Attorney | |
| Mon Jan 25,2010 | Karen Eisenberg | 0.60 |
| | Serve complaint by waiver of service; Prepared Notice of Lawsuit and Waiver; Researched Defendant's service address online and updated file; Mail served Defendant; Eisenberg, Karen / Paralegal | |
| Fri Jan 22,2010 | Nicholas J Bontrager | 0.10 |
| | Received and reviewed ECF notice that complaint was filed; Reviewed; Memo to file; Bontrager, Nick / Attorney | |
| Thu Jan 21,2010 | Karen Eisenberg | 0.10 |
| | Received file stamped copies from court and saved to file; Eisenberg, Karen / Paralegal | |
| Thu Jan 21,2010 | Karen Eisenberg | 0.80 |
| | Case up for filing; Organized and prepared complaint for filing; Prepared civil cover sheet and summons; emailed to Court with payment instructions as per court procedure; Saved to file; Eisenberg, Karen / Paralegal | |
| Wed Jan 20,2010 | Nicholas J Bontrager | 0.20 |
| | Reviewed revised complaint prior to sending to client; Reviewed in full; Approved; Memo to file; Bontrager, Nick / Attorney | |
| Tue Jan 19,2010 | Karen Eisenberg | 0.10 |
| | Prepared follow up email to client regarding potential exhibits to complaint; Saved to file; Eisenberg, Karen / Paralegal | |
| Mon Jan 18,2010 | Karen Eisenberg | 0.20 |
| | Emailed client regarding potential exhibits for complaint; Saved to file; Eisenberg, Karen / Paralegal | |
| Mon Jan 18,2010 | Karen Eisenberg | 0.30 |
| | Revise complaint as per N.Bontrager; Eisenberg, Karen / Paralegal | |
| Fri Jan 15,2010 | Karen Eisenberg | 0.20 |
| | Received email from client; Reviewed; Saved to file; Eisenberg, Karen / Paralegal | |
| Thu Jan 14,2010 | Karen Eisenberg | 0.20 |
| | Received phone call from client regarding status of case; Returned call; Eisenberg, Karen / Paralegal | |
| Thu Jan 14,2010 | Nicholas J Bontrager | 0.20 |
| | Reviewed draft complaint prior to sending to client; Reviewed in full; Approved; Memo to file; Bontrager, Nick / Attorney | |
| Thu Jan 14,2010 | Karen Eisenberg | 1.50 |
| | Prepare Complaint and send to client; Reviewed outline of summary in file (.1); Review all documents and records (.1); Call client to review additional facts (.3); Prepare draft of complaint (.7); Prepare exhibits (.1); Prepare email to client with copy of complaint, call client to request return of documents (.2); Eisenberg, Karen / Paralegal | |
| Wed Jan 6,2010 | Adam J Krohn | 0.60 |
| | Open file in database (.1); Discuss with associate and create factual summary (.2); Prepare outline of procedurally linked events (.2); prepare Amicus Precedent to track case (.1); Krohn, Adam / Non-CO Consulting Attorney / Managing Partner | |
| Thu Jan 7,2010 | Nicholas J Bontrager | 0.40 |
| | Discussed facts of case and potential representation with K.Eisenberg; Discussed facts and | |

|  |  |  |
|---|---|---|
|  | reviewed notes made by K.Eisenberg (.3); Approved to send agreement to client; Drafted client-attorney agreement (.1); Memo to file; Bontrager, Nick / Attorney |  |
| Thu Jan 7,2010 | Karen Eisenberg | 0.80 |
|  | Interview with client; Prepare entire form interview (.3); Prepare memo regarding facts of case to discuss with N.Bontrager (.2);  Discussed potential case with N.Bontrager (.3); Received approval to offer client representation; Delivered attorney-client agreement to client; Received executed copy and forwarded to A.Krohn to open file; Eisenberg, Karen / Paralegal |  |
| Tue Jan 5,2010 | Nicholas J Bontrager | 0.40 |
|  | Received Initial inquiry from client; Set up consult with client and K.Eisenberg; Researched into Defendant and viability; Memo to file; Bontrager, Nick / Attorney |  |

**Total Time(hrs):**   | **37.90** |

**EXHIBIT D**

## BIOGRAPHY OF KROHN & MOSS, LTD. ATTORNEYS

1.      **Adam J. Krohn**

Adam J. Krohn is the managing and founding partner of Krohn & Moss, Ltd. Consumer Law Center, a national consumer protection law firm founded in 1995. Mr. Krohn graduated from the University of Arizona in May 1991 and from the University of San Diego Law School in May 1994. He was admitted to the Illinois Bar in November 1994 and to the United States District Court for the Northern District of Illinois in December 1994. Mr. Krohn was also admitted to the Federal Trial Bar of the Northern District of Illinois in May 1997 and has been admitted to practice before the United States Court of Appeals for the Seventh Circuit. Mr. Krohn has also accepted a position as Adjunct Professor at Chapman University School of Law where he taught a class on Consumer Law during the Spring 2009 semester.

Mr. Krohn was employed as attorney at the Law Firm of Daniel Suber & Associates in August 1994 until August 1995. During his employment, Mr. Krohn participated in approximately ten (10) trials and numerous arbitration hearings; briefed and argued numerous dispositive motions; was responsible for all aspects of pre-trial litigation with respect to pleadings, discovery and motion practice and was involved in litigation at both the state court and federal court levels.

Additionally, Mr. Krohn was employed as attorney at the Law Firm of Friedman & Olson, Ltd. from August, 1995 until October, 1995. During his employment, Mr. Krohn participated in approximately fifteen (15) trials and numerous arbitration hearings; briefed and argued numerous dispositive motions; settled over one thousand (1000) cases and was responsible for all aspects of pre-trial litigation with respect to pleadings, discovery and motion practice.

In May of 1998, Mr. Krohn obtained a $78,866.25 sum for his client, Pamela Connor. A federal jury awarded her actual damages in the amount of $27,166.25 and an additional $25,000.00

in punitive damages against Ford Motor Company pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act.   Mr. Krohn has first chaired at least eight (8) other trials and has personally settled over five hundred (500) cases for Illinois consumers alone.

Mr. Krohn is also responsible for all aspects of the law firm including both administrative responsibilities and legal aspects.   Under Mr. Krohn's direct management, Krohn & Moss, Ltd. has been instrumental in shaping the development of consumer law across the country.   Legal research will yield over 200 Krohn & Moss, Ltd. reported decisions from state appellate courts, state supreme courts, and federal district and circuit courts.   These decisions detail tremendous achievements for consumers involving such matters as consumer fraud, breach of warranty, and fair debt reporting and collection issues.   Recent significant consumer appellate cases by Krohn & Moss, Ltd. include:

      a. *Mydlach v. DaimlerChrysler Corp.*, Illinois Supreme Court
      b. *American Honda Motor Co. v. Cerasani*, Florida Supreme Court
      c. *Razor v. Hyundai Motor America*, Illinois Supreme Court
      d. *Peterson v. Volkswagen of America*, Wisconsin Supreme Court
      e. *Mayberry v. Volkswagen of America*, Wisconsin Supreme Court
      f. *Hyundai Motor America v. Goodin*, Indiana Supreme Court
      g. *Isip v. Mercedes Benz-USA*, California Appellate Court
      h. *Brunner v. DaimlerChrysler Corp.*, California Appellate Court
      i. *Pearson v. DaimlerChrysler Corp.*, Illinois Appellate Court
      j. *Kemper v. Coachman Recreational Vehicle Co., LLC.*, U.S. Dist Ct. (N.D. Ill.)
      k. *Vassilkovska v. Woodfield Nisan, Inc.*, Illinois Appellate Court
      l. *Check v. Clifford Chrysler*, Illinois Appellate Court
      m. *Jones v. William Buick*, Illinois Appellate Court
      n. *Brown v. Trans Union*, LLC, U.S. Dist. Ct. (N.D. Ill)
      o. *Osuna v. Equifax Credit*, U.S. Dist. Ct. (N.D. Ill)
      p. *Burns v. DaimlerChrysler Corp*, Florida Appellate Court
      q. *McGuire v. American Suzuki Motor Corp.*, Ohio Appellate Court
      r. *Melton v. Frigidaire and Best Buy*, Illinois Appellate Court
      s. *Edwards v. Hyundai Motor America*, Missouri Court of Appeals
      t. *McDonald v. Mazda Motors of America*, Georgia Court of Appeals
      u. *Muller v. Winnebago Industries*, U.S. Dist. Ct. (D. Ariz)
      v. *Lemons v. Showcase Motors, Inc.*, Arizona Appellate Court

As a nationally recognized consumer advocate, Mr. Krohn has been the focus of numerous articles regarding matters of consumer interest, and has also been interviewed by countless

newspapers, television and radio stations, and other media outlets as an expert in the field of consumer protection. Mr. Krohn is a member of the National Association of Consumer Advocates, the National Consumer Law Center, Consumers for Auto Reliability and Safety, the Chicago Bar Association and the Illinois Trial Lawyers Association.

### 2. **Nicholas J. Bontrager**

Mr. Bontrager joined Krohn & Moss, Ltd. in April of 2008 focusing his practice on the Fair Debt Collection Practices Act (FDCPA) and the California Rosenthal Fair Debt Collection Practices Act (RFDCPA). Mr. Bontrager received his Juris Doctor from the University of La Verne College of Law in May of 2007and his Bachelor of Arts from the University of California, Santa Barbara in June of 2004. During law school, Mr. Bontrager received Dean's List honors and participated in the Moot Court Honors program, where he received both Second Place Oralist and Semi-Final Team honors. Mr. Bontrager is also currently involved in the Mentor Program at the University of La Verne College of Law.

Mr. Bontrager has represented hundreds of consumers nationwide against many of the nation's debt collection companies handling all aspects of litigation, including trial. Mr. Bontrager finished the year of 2009 as the second "Most Active" FDCPA attorney in the United States representing well over 300 consumers in Federal Court alone (as reported by Webrecon, LLC). During his tenure with Krohn & Moss, Ltd., Mr. Bontrager has acted as lead trial counsel in over 600 FDCPA matters in Federal Court, acted as lead trial counsel in hundreds of RFDCPA matters in California Superior Court and has been associate counsel or otherwise assisted on hundreds of other FDCPA/RFDCPA matters handled by Krohn & Moss, Ltd across the country. Mr. Bontrager is licensed to practice in the State of California and is federally admitted to practice in all United States District Courts of California, the United States District Court of Colorado, the United States District

Court for the Southern District of Illinois, the United States District Court for the Northern District of Florida and the United States Court of Appeals for the Ninth Circuit.

### 3. <u>Christopher G. Addy</u>

Mr. Addy joined Krohn & Moss, Ltd. in April of 2010 focusing his practice on the Fair Debt Collection Practices Act (FDCPA) and the California Rosenthal Fair Debt Collection Practices Act (RFDCPA).   Prior to joining the firm, Mr. Addy participated extensively in hundreds of civil matters, while working to obtain his Juris Doctorate as a Clerk at a boutique civil litigation firm. Mr. Addy then spent several months at an insurance defense firm where he gained valuable experience in multiple areas of the law.

Mr. Addy received his Juris Doctorate from the Southwestern University School of Law in December 2007and his Bachelor of Science from the Michigan State University in May of 2001. At Michigan State, Mr. Addy was a Dean's List / Honor Roll recipient every semester while in attendance.  He graduated with High Honors, in the top 5% of his class, and was awarded several distinguished awards including a lifetime membership in the Golden Key National Honor Society and a lifetime membership in the National Association Collegiate Scholars.  During law school Mr. Addy received the Cali Award for Excellence in Wills and Trusts.  Mr. Addy is licensed to practice law in the Supreme Court of the State of California and is admitted to the United States District Courts for the Central, Southern, Northern and Eastern Districts of California.

### 4. <u>Stephen Harkess</u>

Stephen Harkess is a partner with Harkess & Salter LLC in Lakewood, Colorado.  Licensed in 1999, Mr. Harkess has practiced before the state and federal courts in Colorado including the Colorado Court of Appeals and the 10th Circuit Court of Appeals.  His practice currently focuses on representing consumers in the United States District Court and the United States Bankruptcy Court

in the District of Colorado.

**EXHIBIT E**

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:10-cv-00131-MSK-KMT**

TANISHA TANKERSLEY,

     Plaintiff,

       v.

CONTINENTAL COLLECTION AGENCY,

     Defendant.

---

**DECLARATION OF NICHOLAS J. BONTRAGER IN SUPPORT OF**
**PLAINTIFF'S OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**
**PURSUANT TO THE ACCEPTANCE OF OFFER OF JUDGMENT**

---

     I, NICHOLAS J. BONTRAGER, hereby declare as follows:

    1.   That I have reviewed Plaintiff's Itemized Time Entries included in the Statement of Services.

    2.   That the time entries bearing my name represent the actual attorney hours I spent working on the Plaintiff's case.

    3.   That each of these time entries truly and accurately reflect the services I performed as lead trial counsel representing Plaintiff in this case.

    4.   The time entries were recorded in the ordinary course of business at Krohn & Moss, Ltd. by entering each entry into a computer database, Amicus Attorney.

    5.   The time entries recorded in this case were made contemporaneous to the tasks performed.

    6.   That the time incurred on each entry was reasonably and necessarily incurred.

7.  I have reviewed the bio statement reflecting my experience contained within the

Fee Petition filed in this case.  The bio statement accurately reflects my experience and

qualifications to justify the hourly rate sought for my time.

Pursuant to 28 U.S.C. § 1746(2), I, NICHOLAS J. BONTRAGER, hereby
declare (or certify, verify or state) under penalty of perjury that the foregoing is true and
correct.

DATED:  November 10, 2010                    KROHN & MOSS, LTD.

                                             By:_____

                                             NICHOLAS J. BONTRAGER,
                                             Attorney for Plaintiff

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:10-cv-00131-MSK-KMT

TANISHA TANKERSLEY,

     Plaintiff,

        v.

CONTINENTAL COLLECTION AGENCY,

     Defendant.

---

**DECLARATION OF CHRISTOPHER G. ADDY IN SUPPORT OF PLAINTIFF'S
OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO
THE ACCEPTANCE OF OFFER OF JUDGMENT**

---

I, CHRISTOPHER G. ADDY, hereby declare as follows:

1. That I have reviewed Plaintiff's Itemized Time Entries included in the Statement of Services.

2. That the time entries bearing my name represent the actual attorney hours I spent working and consulting with trial counsel on Plaintiff's case.

3. That each of these time entries truly and accurately reflect the services I performed representing Plaintiff in this case.

4. The time entries were recorded in the ordinary course of business at Krohn & Moss, Ltd. by entering each entry into a computer database, Amicus Attorney.

5. The time entries recorded in this case were made contemporaneous to the tasks performed.

6. That the time incurred on each entry was reasonably and necessarily incurred.

7.   I have reviewed the bio statement reflecting my experience contained within the

Fee Petition filed in this case.   The bio statement accurately reflects my experience and

qualifications to justify the hourly rate sought for my time.

Pursuant to 28 U.S.C. § 1746(2), I, CHRISTOPHER G. ADDY, hereby
declare (or certify, verify or state) under penalty of perjury that the foregoing is true and
correct.

DATED:  November 10, 2010                    KROHN & MOSS, LTD.

By:_____
                                                              CHRISTOPHER G. ADDY,
                                                              Attorney for Plaintiff

2

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-00131-MSK-KMT

TANISHA TANKERSLEY,

      Plaintiff,

          v.

CONTINENTAL COLLECTION AGENCY,

      Defendant.

---

**DECLARATION OF ADAM J. KROHN IN SUPPORT OF PLAINTIFF'S
OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO
THE ACCEPTANCE OF OFFER OF JUDGMENT**

---

I, ADAM J. KROHN, declare as follows:

1. That I have reviewed Plaintiff's Itemized Time Entries included in the Statement of Services.

2. That the time entries bearing my name represent the actual attorney hours I spent working on the appeal of Plaintiff's case.

3. That each of these time entries truly and accurately reflect the services I performed representing Plaintiff in the appeal of this case.

4. I have also reviewed the time entries incurred in this case that bear the names of other attorneys and personnel from my firm. I am familiar with these time entries as I managed/supervised the appeal of this case and I managed/supervised our bill on appeal.

5. The time entries were recorded in the ordinary course of business at Krohn & Moss, Ltd. by entering each entry into a computer database, Amicus Attorney.

1

6. The time entries recorded in this case were made contemporaneous to the tasks performed.

7. That the time incurred on each entry was reasonably and necessarily incurred.

8. I have reviewed the bio statement reflecting my experience contained within the Fee Petition filed in this Case. The bio statement accurately reflects my experience and qualifications to justify the hourly rate sought for my time.

9. I am familiar with the attorneys and/other personnel that performed work on the appeal of this case and the bio statement attached to the Fee Petition in this case accurately states the experience and qualifications of these individuals to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746(2), I, Adam J. Krohn, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

DATED: November 10, 2010          KROHN & MOSS, LTD.

                                  By: _____
                                      Adam J. Krohn,
                                      Managing Partner

2

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-00131-MSK-KMT

TANISHA TANKERSLEY,

    Plaintiff,

       v.

CONTINENTAL COLLECTION AGENCY,

    Defendant.

---

**DECLARATION OF STEPHEN HARKESS IN SUPPORT OF PLAINTIFF'S
OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO
THE ACCEPTANCE OF OFFER OF JUDGMENT**

    I, STEPHEN HARKESS, hereby declare as follows:

    1.  That I have reviewed Plaintiff's Itemized Time Entries included in the Statement of Services.

    2.  That the time entries bearing my name represent the actual attorney hours I spent working on the Plaintiff's case.

    3.  That each of these time entries truly and accurately reflect the services I performed representing Plaintiff in this case.

    4.  The time entries were recorded in the ordinary course of business as local counsel for Krohn & Moss, Ltd.

    6.  The time entries recorded in this case under my name were made contemporaneous to the tasks I performed.

1

7. That the time incurred on each entry under may name was reasonably and necessarily incurred.

8. I have reviewed the bio statement reflecting my experience contained within the Fee Petition filed in this case. The bio statement accurately reflects my experience and qualifications to justify the hourly rate sought for my time.


Pursuant to 28 U.S.C. § 1746(2), I, STEPHEN HARKESS, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.


DATED:  November 11, 2010

By:_____
            STEPHEN HARKESS,
            Local Counsel for Plaintiff

**EXHIBIT F**

# CONSUMER LAW ATTORNEY FEE SURVEY

# 2007

Conducted By

Ronald L. Burdge
Burdge Law Office Co. LPA
2299 Miamisburg Centerville Road
Dayton, OH 45459-3817
Voice: 937.432.9500
Fax: 937.432.9503
Email: Ron@TheLawCoach.com

Copyright 2007 by R.L.Burdge

## Table of Contents

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    Methodology. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

    The Average and the Median: What it Means to You. . . . . . . . . . . . .   2

    Geographic Areas Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    Interpreting the Findings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Summary Profile of the Typical US Consumer Law Attorney. . . . . . . . . . . .   5

Regional Table for All Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Regional Years in Practice Table. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    Atlantic Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    California Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    Florida Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

    Mid West Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

    New York Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

    North East Region Firms.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

    Ohio Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Pacific Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
South Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Texas Region Firms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
West Region Firms.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Regional Median Summaries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   Explanation of Tables. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   Atlantic. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
   California.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
   Florida. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
   Mid West. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
   New York.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
   North East. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
   Ohio. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
   Pacific. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
   South. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
   Texas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
   US Territories. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
   West. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Note: Recommendations for Future Survey Data. . . . . . . . . . . . . . . . . . . 32

# Introduction

This report publishes the results of the Consumer Law Attorney Fee Survey, 2007. Two new facets have been added this year.

First, a "Summary Profile of the Typical US Consumer Law Attorney" has been added. It is a collective approach to the entire survey results, yielding a picture of the typical US Consumer Law practitioner scenario.

Second, a table of "Regional Median Summaries" has been added, reporting not just a median analysis (which is itself entirely new to the survey), but also the results of all of the survey questions on a localized, regional approach.

Prior studies have shown that the factors most influencing an hourly rate are an attorney's years in practice, location of practice, and size of firm. For that reason the concentration of practice tables previously compiled, while providing useful information at the time, are being dropped this year, in favor of the more detailed data provided by the Regional Median Summaries of each of the 12 regions in the survey.

In compiling this report, members of the National Association of Consumer Advocates and Consumer Law attorneys across the United States and its territories were invited to participate during the early Fall of 2007.

Information was collected for the individual's most commonly used data as of November 2007. As previously, an on-line survey service was utilized to gather and tabulate the results.

Similar studies were undertaken in 2000, 2001, 2003, 2004, and 2005. The objectives of these studies were to determine, among other things, the demographics of Consumer Law practitioners, including attorney hourly billing rate, firm size, years in practice, concentration of practice, primary and secondary practice area prevalence, paralegal billing rates and other data.

The collected information has been condensed into this reference to provide benchmarks to assist Consumer Law attorneys as they manage

1

their practice. Because of the increasing involvement of paralegals and law clerks in non-administrative day to day aspects of legal practice, data is also compiled on regional paralegal hourly rates.

The data is reported in several tables below, allowing the reader to consider the data from the viewpoint of a selected factor or criteria, such as the number of years practicing Consumer Law.

# Methodology

Survey results are based on an on-line survey fielded during August and November 2007, consisting of 9 key data questions. The entire active membership of the National Association of Consumer Advocates (except for persons employed in public employment or education) along with other known Consumer Law practitioners from around the United States, with e-mail addresses was surveyed. Invitations to participate were also randomly sent to attorneys disclosed through internet search engine results conducted on a national level as well as randomly selected physical telephone book specialty listings where available.

To help practitioners understand and interpret the data below, a brief explanation of the data may help.

# The Average and the Median: What it Means to You

This year we introduce a new analysis methodology intended to give a different perspective on the data, the Median number analysis. For that reason, the tables below used some terms whose definition may not be clear to most Consumer Law practitioners.

The "average" (sometimes called the arithmetic average) is calculated by adding the values of all responses, then dividing by the number of responses.

Example: Five responses are reported, 3, 4, 6, 7 and 8. The average is calculated by adding their values (3 + 4 + 5 + 6 + 7 + 8 = 33), then dividing

by the number of responses (5). Thus, the average is 33 / 5 = 6.6.

The median is the middle value of a series of values, which is initially rank-ordered from low to high. By definition, half the numbers are greater and half are less than the median. Both mean and median values are used in this survey report as a pointer for the "central area" of survey results without regard to the average. Statisticians variously agree that using the median as a statistic reduces the effect of extreme outer numbers (extremely high or low values, such as 25 in the above example). Using an average takes all numbers into accounting.

Example: Five responses are reported, 3, 4, 6, 7 and 8. The median is the middle number of the order of distribution, 6. The average of this same distribution of numbers is 6.6.

The median literally is the value in the middle. It represents the mid way point in a sequence of numbers. Half the numbers in the list are above it and half are below it. It is determined by lining up the values in the set of data (in this fee survey that would be all of the individual fee rate responses logged in the survey) from the smallest on up to the largest. The one in the dead-center is the median number.

The median is not the average of the numbers (you don't add anything) in the list, but merely the center of the list. Some statisticians say that using the mean (instead of the average) gives less weight to the individual fee rates that are on the outer limits of the survey responses and is more likely to direct the survey to the "real" center of the responses.

Because the median number is commonly not the same as the average number, being either slightly above or below it, we are including both results in this year's survey results.

# Geographic Areas Defined

The data has been compiled in twelve geographic regions, including several states identified as their own "region." This is loosely based on a combination of three factors: the Altman-Weil regional tables, the quantity

of Consumer Law attorneys that were readily identified as practicing in each state, and the geographic proximity of any one state to a nearby overall region.

| | |
|---|---|
| Atlantic: | DC, DE, NC, NJ, PA, VA, WV |
| California | |
| Florida | |
| Mid West: | IA, IL, IN, KS, MI, MN, MO, ND, NE, SD, WI |
| New York | |
| North East: | CT, MA, MD, ME, NH, RI, VT |
| Ohio | |
| Pacific: | AK, HI, OR, WA |
| South: | AL, AR, GA, KY, LA, MS, OK, SC, TN |
| Texas | |
| US Territories: | Puerto Rico, Guam, American Samoa, US Virgin Islands |
| West: | AZ, CO, ID, MT, NM, NV, UT, WY |

## Interpreting the Findings

An hourly rate is impacted by several factors, including years of practice, firm size, practice location, degree of practice concentration, reputation, advertising, personal client relationships, and other factors.  As a result, the information presented here is for informational purposes only and may or may not be indicative of a particular attorney's reasonable hourly rate without further, more detailed analysis of the available and other data.

The Regional Median Summaries table is presented to give an overview of the practice on Consumer Law lawyers in each region, but note the use of the median in this section to reduce the effect of extremely high or low values in some data.

Where necessary, absent or insufficient data is represented by a dash mark instead of a numerical entry in the column.

4

# Summary Profile of the Typical US Consumer Law Attorney

This section summarizes key statistics derived from the survey. Emphasis here is on the "average" Consumer Law attorney in the United States with respect to hourly billing rates and other survey factors.

The typical Consumer Law attorney is in a small office of 4 or fewer practitioners and has been practicing law for 15 to 16 years. 83% of their practice consists of Consumer Law issues with the practice supplemented by either Personal Injury or Bankruptcy cases.

The typical Consumer Law firm employs 1 paralegal (1.4 to be exact) whose hourly billable rate is $93.25.

The average hourly rate for the typical Consumer Law attorney (regardless of all other factors) is $307.

The median Attorney hourly rate is $308. The median 25% Attorney hourly rate (the point at which 25% of all survey participants reported an hourly rate lower than this number) is $244. The median 75% Attorney hourly rate is $365. Only 5% of survey participants reported an hourly rate higher than $465.

The typical firm has not changed their hourly rates in the last 14.75 months.

5

# Regional Table for All Firms

This Table does not take into consideration the factors of the degree of concentration or years of practice, among other things, all of which will have a large impact on any particular person's hourly rate.

| Region: | % of Total Survey Responses From This Region: | Small Firm % of Region (<5) | Large Firm % of Region (>5) | Small Firm Average Attorney Rate In this Region | Large Firm Average Attorney Rate In this Region | Small Firm Average Paralegal Rate In this Region | Large Firm Average Paralegal Rate In this Region |
|---|---|---|---|---|---|---|---|
| Atlantic (DC DE NC NJ PA VA WV) | 10 | 81 | 19 | 313 | 417 | 108 | 121 |
| California | 22 | 75 | 25 | 372 | 445 | 141 | 140 |
| Florida | 6.5 | 76 | 24 | 339 | 375 | 98 | 131 |
| Mid West (IA IL IN KS MI MN MO ND NE SD WI) | 16 | 60 | 40 | 323 | 274 | 110 | 126 |
| New York | 4 | 79 | 21 | 363 | 358 | 115 | 112 |

| Region: | % of Total Survey Responses From This Region: | Small Firm % of Region (<5) | Large Firm % of Region (>5) | Small Firm Average Attorney Rate In this Region | Large Firm Average Attorney Rate In this Region | Small Firm Average Paralegal Rate In this Region | Large Firm Average Paralegal Rate In this Region |
|---|---|---|---|---|---|---|---|
| North East (CT MA MD ME NH RI VT) | 4 | 71 | 29 | 298 | 425 | 115 | 108 |
| Ohio | 10 | 94 | 7 | 269 | 412 | 113 | - |
| Pacific (AK HI OR WA) | 4.6 | 93 | 7 | 268 | 350 | 96 | 150 |
| South (AL AR GA KY LA MS OK SC TN) | 8.7 | 82 | 18 | 292 | 225 | 94 | 100 |
| Texas | 6 | 90 | 10 | 291 | 425 | 88 | 125 |
| US Territories | 1 | 100 | - | 200 | - | 75 | - |
| West (AZ CO ID MT NM NV UT WY) | 6.8 | 77 | 23 | 287 | 275 | 113 | 100 |

# Regional Years in Practice Table

## Atlantic Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|:---:|:---:|
| <1 | - |
| 1-3 | 219 |
| 3-5 | 263 |
| 6-10 | 300 |
| 11-15 | 425 |
| 16-20 | 350 |
| 21-25 | 375 |
| 26-30 | 375 |
| >31 | 400 |

California Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 175 |
| 1-3 | 290 |
| 3-5 | 333 |
| 6-10 | 367 |
| 11-15 | 383 |
| 16-20 | 450 |
| 21-25 | 297 |
| 26-30 | 450 |
| >31 | 471 |

## Florida Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 250 |
| 1-3 | 250 |
| 3-5 | - |
| 6-10 | 320 |
| 11-15 | 338 |
| 16-20 | 338 |
| 21-25 | 350 |
| 26-30 | 350 |
| >31 | 483 |

## Mid West Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 250 |
| 1-3 | 225 |
| 3-5 | 254 |
| 6-10 | 289 |
| 11-15 | 394 |
| 16-20 | 270 |
| 21-25 | 322 |
| 26-30 | 350 |
| >31 | 290 |

11

## New York Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | - |
| 1-3 | 225 |
| 3-5 | - |
| 6-10 | 275 |
| 11-15 | 350 |
| 16-20 | 350 |
| 21-25 | 340 |
| 26-30 | 325 |
| >31 | 463 |

## North East Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | - |
| 1-3 | - |
| 3-5 | 100 |
| 6-10 | 267 |
| 11-15 | 325 |
| 16-20 | 338 |
| 21-25 | - |
| 26-30 | 392 |
| >31 | 400 |

# Ohio Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 175 |
| 1-3 | 233 |
| 3-5 | - |
| 6-10 | 225 |
| 11-15 | 318 |
| 16-20 | 308 |
| 21-25 | 275 |
| 26-30 | 256 |
| >31 | 290 |

## Pacific Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|:---:|:---:|
| <1 | - |
| 1-3 | 150 |
| 3-5 | - |
| 6-10 | 238 |
| 11-15 | 292 |
| 16-20 | 325 |
| 21-25 | 338 |
| 26-30 | 258 |
| >31 | 338 |

## South Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | - |
| 1-3 | 225 |
| 3-5 | 275 |
| 6-10 | 325 |
| 11-15 | 246 |
| 16-20 | 263 |
| 21-25 | 425 |
| 26-30 | 275 |
| >31 | 333 |

## Texas Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|:---:|:---:|
| <1 | - |
| 1-3 | 200 |
| 3-5 | 225 |
| 6-10 | 275 |
| 11-15 | 225 |
| 16-20 | 275 |
| 21-25 | 308 |
| 26-30 | 275 |
| >31 | 433 |

# West Region Firms

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | - |
| 1-3 | 275 |
| 3-5 | 242 |
| 6-10 | 250 |
| 11-15 | 325 |
| 16-20 | 325 |
| 21-25 | 325 |
| 26-30 | 288 |
| >31 | 375 |

# Regional Median Summaries

## Explanation of Tables

| | |
|---|---|
| Firm Size | <5 means fewer than 5 attorneys in the law firm size.<br>>5 means 5 or more attorneys in the law firm size. |
| Years in Practice | The median number of years that all attorneys in this region have been in practice. |
| Concentration of Practice in Consumer Law | Expressed as a percentage, ranges are avoided where possible in preference to a specific result. |
| Primary Practice Area | The area comprising at least 50% of the practice. |
| Secondary Practice Area | The largest practice area outside of Consumer Law. Where no one area dominates a dash is entered in the table. |
| Number of Paralegals in Firm | The median number resulting from all survey responses. |
| Last Time Rate Change Occurred (months) | Expressed in months, ranges are avoided where possible in preference to a specific result. |
| Median Paralegal Rate for All Paralegals | Expressed in dollars, ranges are avoided where possible in preference to a specific result. |
| Average Attorney Rate for All Attorneys | Expressed in dollars, ranges are avoided where possible in preference to a specific result. Note that this is not the "median." |
| 25% Median Attorney Rate for All Attorneys | 25% of all survey responses are below this number, expressed in dollars. |
| Median Attorney Rate for All Attorneys | Half of all survey responses are above this number and half below, expressed in dollars. |
| 75% Median Attorney Rate for All Attorneys | 75% of all survey responses are below this number, expressed in dollars. |
| 95% Median Attorney Rate for All Attorneys | 5% of all survey responses are above this number, expressed in dollars. |

## Atlantic

| Firm Size | <5 |
|---|---|
| Years in Practice | 25 |
| Concentration of Practice in Consumer Law | 90-100 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | - |
| Number of Paralegals in Firm | 3 |
| Last Time Rate Change Occurred (months) | 7-11 |
| Median Paralegal Rate for All Paralegals | 100-124 |
| Average Attorney Rate for All Attorneys | 343 |
| 25% Median Attorney Rate for All Attorneys | 245 |
| Median Attorney Rate for All Attorneys | 412 |
| 75% Median Attorney Rate for All Attorneys | 400 |
| 95% Median Attorney Rate for All Attorneys | 475 |

## California

| | |
|---|---|
| Firm Size | <5 |
| Years in Practice | 11-15 |
| Concentration of Practice in Consumer Law | 90-100 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Other |
| Number of Paralegals in Firm | 1 |
| Last Time Rate Change Occurred (months) | 12 |
| Median Paralegal Rate for All Paralegals | 125-149 |
| Average Attorney Rate for All Attorneys | 394 |
| 25% Median Attorney Rate for All Attorneys | 312 |
| Median Attorney Rate for All Attorneys | 350-374 |
| 75% Median Attorney Rate for All Attorneys | 450 |
| 95% Median Attorney Rate for All Attorneys | 575 |

## Florida

| | |
|---|---|
| Firm Size | <5 |
| Years in Practice | 11-15 |
| Concentration of Practice in Consumer Law | 90 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Personal Injury |
| Number of Paralegals in Firm | 1 |
| Last Time Rate Change Occurred (months) | 12-24 |
| Median Paralegal Rate for All Paralegals | 100 |
| Average Attorney Rate for All Attorneys | 348 |
| 25% Median Attorney Rate for All Attorneys | 262 |
| Median Attorney Rate for All Attorneys | 325-349 |
| 75% Median Attorney Rate for All Attorneys | 388 |
| 95% Median Attorney Rate for All Attorneys | 432 |

## Mid West

| | |
|---|---|
| Firm Size | <5 |
| Years in Practice | 14 |
| Concentration of Practice in Consumer Law | 90-100 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Number of Paralegals in Firm | 1 |
| Last Time Rate Change Occurred (months) | 12-24 |
| Median Paralegal Rate for All Paralegals | 110 |
| Average Attorney Rate for All Attorneys | 304 |
| 25% Median Attorney Rate for All Attorneys | 252 |
| Median Attorney Rate for All Attorneys | 275 |
| 75% Median Attorney Rate for All Attorneys | 350 |
| 95% Median Attorney Rate for All Attorneys | 450 |

## New York

| Firm Size | <5 |
|---|---|
| Years in Practice | 21 |
| Concentration of Practice in Consumer Law | 60-69 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Number of Paralegals in Firm | 1 |
| Last Time Rate Change Occurred (months) | 12-24 |
| Median Paralegal Rate for All Paralegals | 100 |
| Average Attorney Rate for All Attorneys | 363 |
| 25% Median Attorney Rate for All Attorneys | 255 |
| Median Attorney Rate for All Attorneys | 325 |
| 75% Median Attorney Rate for All Attorneys | 390 |
| 95% Median Attorney Rate for All Attorneys | 575 |

## North East

| | |
|---|---|
| Firm Size | <5 |
| Years in Practice | 20 |
| Concentration of Practice in Consumer Law | 90-100 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Other |
| Number of Paralegals in Firm | 1 |
| Last Time Rate Change Occurred (months) | 12 |
| Median Paralegal Rate for All Paralegals | 75-99 |
| Average Attorney Rate for All Attorneys | 334 |
| 25% Median Attorney Rate for All Attorneys | 275 |
| Median Attorney Rate for All Attorneys | 325 |
| 75% Median Attorney Rate for All Attorneys | 440 |
| 95% Median Attorney Rate for All Attorneys | 488 |

## Ohio

| | |
|---|---|
| Firm Size | <5 |
| Years in Practice | 11-15 |
| Concentration of Practice in Consumer Law | 70-79 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Number of Paralegals in Firm | 1 |
| Last Time Rate Change Occurred (months) | 12-24 |
| Median Paralegal Rate for All Paralegals | 75-99 |
| Average Attorney Rate for All Attorneys | 260 |
| 25% Median Attorney Rate for All Attorneys | 210 |
| Median Attorney Rate for All Attorneys | 250 |
| 75% Median Attorney Rate for All Attorneys | 300 |
| 95% Median Attorney Rate for All Attorneys | 425 |

## Pacific

| | |
|---|---|
| Firm Size | <5 |
| Years in Practice | 11-15 |
| Concentration of Practice in Consumer Law | 60-69 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Personal Injury |
| Number of Paralegals in Firm | 1 |
| Last Time Rate Change Occurred (months) | 7-11 |
| Median Paralegal Rate for All Paralegals | 75 |
| Average Attorney Rate for All Attorneys | 273 |
| 25% Median Attorney Rate for All Attorneys | 209 |
| Median Attorney Rate for All Attorneys | 250 |
| 75% Median Attorney Rate for All Attorneys | 320 |
| 95% Median Attorney Rate for All Attorneys | 388 |

## South

| Firm Size | <5 |
|---|---|
| Years in Practice | 16-20 |
| Concentration of Practice in Consumer Law | 90 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Personal Injury |
| Number of Paralegals in Firm | 2 |
| Last Time Rate Change Occurred (months) | 12-24 |
| Median Paralegal Rate for All Paralegals | 75 |
| Average Attorney Rate for All Attorneys | 282 |
| 25% Median Attorney Rate for All Attorneys | 207 |
| Median Attorney Rate for All Attorneys | 250 |
| 75% Median Attorney Rate for All Attorneys | 300 |
| 95% Median Attorney Rate for All Attorneys | 425 |

## Texas

| | |
|---|---|
| Firm Size | <5 |
| Years in Practice | 16-20 |
| Concentration of Practice in Consumer Law | 90-100 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Number of Paralegals in Firm | 1 |
| Last Time Rate Change Occurred (months) | 12-24 |
| Median Paralegal Rate for All Paralegals | 75-99 |
| Average Attorney Rate for All Attorneys | 305 |
| 25% Median Attorney Rate for All Attorneys | 212 |
| Median Attorney Rate for All Attorneys | 275 |
| 75% Median Attorney Rate for All Attorneys | 350 |
| 95% Median Attorney Rate for All Attorneys | 575 |

## US Territories

| Firm Size | <5 |
|---|---|
| Years in Practice | 11-15 |
| Concentration of Practice in Consumer Law | 20-29 |
| Primary Practice Area | Bankruptcy |
| Secondary Practice Area | General Practice |
| Number of Paralegals in Firm | 2 |
| Last Time Rate Change Occurred (months) | 12-24 |
| Median Paralegal Rate for All Paralegals | 50-74 |
| Average Attorney Rate for All Attorneys | 200 |
| 25% Median Attorney Rate for All Attorneys | - |
| Median Attorney Rate for All Attorneys | 200 |
| 75% Median Attorney Rate for All Attorneys | - |
| 95% Median Attorney Rate for All Attorneys | - |

## West

| Firm Size | <5 |
|---|---|
| Years in Practice | 6-10 |
| Concentration of Practice in Consumer Law | 90-100 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Personal Injury |
| Number of Paralegals in Firm | 2 |
| Last Time Rate Change Occurred (months) | 7-11 |
| Median Paralegal Rate for All Paralegals | 75-99 |
| Average Attorney Rate for All Attorneys | 285 |
| 25% Median Attorney Rate for All Attorneys | 250 |
| Median Attorney Rate for All Attorneys | 250-274 |
| 75% Median Attorney Rate for All Attorneys | 320 |
| 95% Median Attorney Rate for All Attorneys | 363 |

# Note: Recommendations for Future Survey Data

As always, we welcome your Recommendations on improving the survey to gather additional useful information for Consumer Law practitioners. Please email your Recommendations to Ron@TheLawCoach.com.

Copyright 2007 by R.L.Burdge

**EXHIBIT G**

# ALM RESEARCH

## 2007 NLJ Billing Survey
Copyright © 2008, ALM Properties, Inc , All Rights Reserved

| Fiscal Year | Firm Name | Location | Partner Billing Rate High | Partner Billing Rate Low | Partner Billing Rate Med | Associate Billing Rate High | Associate Billing Rate Low | Associate Billing Rate Med |
|---|---|---|---|---|---|---|---|---|
| 2007 | Roetzel & Andress | Akron, OH | $460 | $210 | $300 | $275 | $110 | $200 |
| 2007 | Fisher & Phillips | Atlanta | | | | | | |
| 2007 | Ford & Harrison | Atlanta | $560 | $325 | | $395 | $210 | |
| 2007 | Kilpatrick Stockton | Atlanta | | | | | | |
| 2007 | Morris, Manning & Martin | Atlanta | $625 | $350 | $395 | $400 | $180 | $310 |
| 2007 | Smith, Gambrell & Russell | Atlanta | $575 | $250 | | $345 | $175 | |
| 2007 | Sutherland Asbill & Brennan | Atlanta | $715 | $375 | $500 | $415 | $215 | $280 |
| 2007 | Troutman Sanders | Atlanta | | | | | | |
| 2007 | Miles & Stockbridge | Baltimore | $535 | $315 | | $405 | $205 | |
| 2007 | Bradley Arant Rose & White | Birmingham, Ala | $520 | $240 | $330 | $280 | $180 | $205 |
| 2007 | Burr & Forman | Birmingham, Ala | $470 | $250 | | $305 | $175 | |
| 2007 | Bingham McCutchen | Boston | | | | | | |
| 2007 | Choate, Hall & Stewart | Boston | | | | | | |
| 2007 | Edwards Angell Palmer & Dodge | Boston | $700 | $350 | $513 | $450 | $170 | $280 |
| 2007 | Foley Hoag | Boston | | | | | | |
| 2007 | Goulston & Storrs | Boston | | | | | | |
| 2007 | Nixon Peabody | Boston | | | | | | |
| 2007 | Sullivan & Worcester | Boston | $700 | $415 | $540 | $420 | $245 | $290 |
| 2007 | Hodgson Russ | Buffalo, NY | $645 | $215 | $350 | $395 | $155 | $205 |
| 2007 | Phillips Lytle | Buffalo, NY | $435 | $245 | $300 | $300 | $140 | $205 |
| 2007 | Moore & Van Allen | Charlotte, NC | $765 | $265 | | $330 | $175 | |
| 2007 | Parker, Poe, Adams & Bernstein | Charlotte, NC | | | | | | |
| 2007 | Miller & Martin | Chattanooga, Tenn | $580 | $230 | $340 | $295 | $160 | $195 |
| 2007 | Bell, Boyd & Lloyd | Chicago | | | | | | |
| 2007 | Brinks Hofer Gilson & Lione | Chicago | $650 | $300 | $485 | $410 | $180 | $250 |
| 2007 | Chapman and Cutler | Chicago | | | | | | |
| 2007 | DLA Piper US | Chicago | | | | | | |
| 2007 | Hinshaw & Culbertson | Chicago | | | | | | |
| 2007 | Jenner & Block LLP | Chicago | $900 | $450 | $525 | $425 | $275 | $325 |
| 2007 | Kirkland & Ellis | Chicago | | | | | | |
| 2007 | LeBoeuf, Lamb, Greene & MacRae | Chicago | | | | | | |
| 2007 | Lord, Bissell & Brook | Chicago | $690 | $335 | $475 | $410 | $200 | $300 |
| 2007 | Mayer, Brown, Rowe & Maw | Chicago | | | | | | |
| 2007 | McDonnell Boehnen | Chicago | | | | | | |
| 2007 | Neal, Gerber & Eisenberg | Chicago | | | | | | |
| 2007 | Schiff Hardin | Chicago | | | | | | |
| 2007 | Vedder, Price, Kaufman & Kammholz | Chicago | $650 | $335 | $425 | $410 | $205 | $370 |
| 2007 | Wildman, Harrold, Allen & Dixon | Chicago | | | | | | |
| 2007 | Winston & Strawn | Chicago | $845 | $400 | $640 | $590 | $200 | $395 |
| 2007 | Dinsmore & Shohl | Cincinnati | $475 | $235 | $340 | $285 | $155 | $190 |
| 2007 | Frost Brown Todd | Cincinnati | $455 | $225 | $295 | $255 | $145 | $170 |
| 2007 | Steptoe & Johnson PLLC | Clarksburg, WVa | $325 | $200 | | $250 | $170 | |
| 2007 | Baker & Hostetler | Cleveland | | | | | | |
| 2007 | Calfee, Halter & Griswold | Cleveland | | | | | | |
| 2007 | Squire, Sanders & Dempsey | Cleveland | | | | | | |
| 2007 | Ulmer & Berne | Cleveland | $470 | $240 | | $290 | $165 | |
| 2007 | Nelson Mullins Riley & Scarborough | Columbia, SC | | | | | | |
| 2007 | Nexsen Pruet Jacobs & Pollard | Columbia, SC | $420 | $220 | | $250 | $150 | |
| 2007 | Vorys, Sater, Seymour and Pease | Columbus, Ohio | | | | | | |
| 2007 | Rutan & Tucker | Costa Mesa, CA | $600 | $335 | | $350 | $210 | |
| 2007 | Plunkett & Cooney | Costa Mesa. Calif | | | | | | |
| 2007 | Gardere Wynne Sewell | Dallas | $715 | $350 | $475 | $425 | $220 | $265 |
| 2007 | Locke, Lord, Bissell & Liddell | Dallas | $900 | $375 | $490 | $390 | $190 | $280 |
| 2007 | Strasburger & Price | Dallas | $560 | $225 | $363 | $395 | $200 | $223 |
| 2007 | Thompson & Knight | Dallas | $730 | $370 | $485 | $370 | $205 | $310 |
| 2007 | Winstead Sechrest & Minick | Dallas | $620 | $345 | | $360 | $180 | |
| 2007 | Brownstein Hyatt Farber Schreck | Denver | $675 | $260 | $390 | $270 | $170 | $218 |
| 2007 | Holland & Hart | Denver | $585 | $275 | $385 | $345 | $165 | $275 |
| 2007 | Holme Roberts & Owen | Denver | $635 | $285 | $410 | $420 | $195 | $265 |
| 2007 | Sherman & Howard | Denver, CO | | | | | | |
| 2007 | Butzel Long | Detroit | $575 | $210 | | $350 | $155 | |
| 2007 | Dickinson Wright | Detroit | $530 | $260 | | $275 | $170 | |
| 2007 | Dykema Gossett | Detroit | $625 | $245 | | $390 | $185 | |
| 2007 | Honigman Miller Schwartz and Cohn | Detroit | | | | | | |
| 2007 | Miller, Canfield, Paddock and Stone, PLC | Detroit | $595 | $265 | $400 | $340 | $160 | $220 |
| 2007 | Day Pitney | Florham Park. NJ | $650 | $350 | $465 | $525 | $210 | $310 |

| Year | Firm | City | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2007 | Ruden, McClosky. Smith, Schuster & Russell, PA | Fort Lauderdale. FI | | | | | | |
| 2007 | Warner Norcross & Judd | Grand Rapids. Mich | | | | | | |
| 2007 | Ogletree, Deakins, Nash. Smoak & Stewart | Greenville. SC | $575 | $270 | | $360 | $200 | |
| 2007 | Robinson & Cole | Hartford, Conn | $575 | $340 | $420 | $325 | $200 | $280 |
| 2007 | Andrews Kurth | Houston | $795 | $400 | | $460 | $210 | |
| 2007 | Bracewell & Giuliani | Houston | | | | | | |
| 2007 | Fulbright & Jaworski | Houston | | | | | | |
| 2007 | Vinson & Elkins | Houston | | | | | | |
| 2007 | Barnes & Thornburg | Indianapolis | $485 | $265 | $355 | $295 | $180 | $220 |
| 2007 | Ice Miller | Indianapolis | | | | | | |
| 2007 | Knobbe, Martens, Olson & Bear | Irvine, Calif | $645 | $340 | | $420 | $215 | |
| 2007 | Lathrop & Gage | Kansas City, MO | $450 | $225 | $300 | $300 | $140 | $185 |
| 2007 | Polsinelli Shalton Welte Suelthaus | Kansas City, MO | $600 | $250 | | $250 | $175 | |
| 2007 | Shook, Hardy & Bacon | Kansas City, Mo | | | | | | |
| 2007 | Shughart Thomson & Kilroy | Kansas City, MO | $475 | $235 | | $225 | $160 | |
| 2007 | Stinson Morrison Hecker | Kansas City, MO | $600 | $230 | $365 | $250 | $175 | $225 |
| 2007 | Allen Matkins Leck Gamble & Mallory | Los Angeles | | | | | | |
| 2007 | Gibson, Dunn & Crutcher | Los Angeles | | | | | | |
| 2007 | Irell & Manella | Los Angeles | | | | | | |
| 2007 | Lewis Brisbois Bisgaard & Smith | Los Angeles | | | | | | |
| 2007 | Loeb & Loeb | Los Angeles | $875 | $425 | $600 | $500 | $240 | $400 |
| 2007 | Manatt, Phelps & Phillips | Los Angeles | $785 | $520 | $590 | $480 | $265 | $415 |
| 2007 | Munger, Tolles & Olson | Los Angeles | | | | | | |
| 2007 | O'Melveny & Myers | Los Angeles | | | | | | |
| 2007 | Paul, Hastings, Janofsky & Walker | Los Angeles | | | | | | |
| 2007 | Sheppard, Mullin, Richter & Hampton | Los Angeles | $795 | $425 | | $550 | $260 | |
| 2007 | Greenebaum Doll & McDonald | Louisville, Ky | | | | | | |
| 2007 | Stites & Harbison | Louisville, Ky | | | | | | |
| 2007 | Wyatt, Tarrant & Combs | Louisville, Ky | | | | | | |
| 2007 | Baker, Donelson. Bearman, Caldwell & Berkowitz | Memphis. Tenn | $525 | $230 | $320 | $315 | $160 | $200 |
| 2007 | Akerman Senterfitt | Miami | | | | | | |
| 2007 | Foley & Lardner | Milwaukee | $855 | | | $550 | $185 | $375 |
| 2007 | Michael Best & Friedrich | Milwaukee | $550 | $225 | $350 | $300 | $185 | $235 |
| 2007 | Quarles & Brady | Milwaukee | $575 | $260 | $375 | $335 | $185 | $235 |
| 2007 | Reinhart Boerner Van Deuren sc | Milwaukee | | | | | | |
| 2007 | Briggs and Morgan | Minneapolis | $500 | $250 | $395 | $325 | $195 | $230 |
| 2007 | Dorsey & Whitney | Minneapolis | $750 | $220 | $463 | $470 | $145 | $260 |
| 2007 | Faegre & Benson | Minneapolis | | | | | | |
| 2007 | Leonard, Street and Deinard | Minneapolis | $500 | $300 | | $300 | $185 | |
| 2007 | Lindquist & Vennum | Minneapolis | $500 | $260 | | $260 | $165 | |
| 2007 | Bowman and Brooke | Minneapolis, MN | | | | | | |
| 2007 | Gray, Plant, Mooty, Mooty & Bennett, PA | Minneapolis, MN | | | | | | |
| 2007 | McElroy Deutsch, Mulvaney & Carpenter | Morristown, NJ | $450 | $295 | $235 | $225 | $135 | $165 |
| 2007 | Fenwick & West | Mountain View. Calif | $775 | $500 | $600 | $500 | $245 | $370 |
| 2007 | Bass, Berry & Sims PLC | Nashville, Tenn | $575 | $300 | | $285 | $180 | |
| 2007 | Wiggin and Dana | New Haven, CT | $590 | $295 | | $350 | $195 | |
| 2007 | Adams and Reese | New Orleans | $500 | $225 | $300 | $255 | $165 | $197 |
| 2007 | Jones. Walker, Waechter, Poitevent. Carrere & Denegre | New Orleans | $600 | $210 | | $225 | $150 | |
| 2007 | Phelps Dunbar | New Orleans | $450 | $170 | | $205 | $130 | $175 |
| 2007 | Cadwalader, Wickersham & Taft | New York | | | | | | |
| 2007 | Cahill Gordon & Reindel | New York | | | | | | |
| 2007 | Chadbourne & Parke | New York | | | | | | |
| 2007 | Cleary Gottlieb Steen & Hamilton | New York | | | | | | |
| 2007 | Cravath, Swaine & Moore | New York | | | | | | |
| 2007 | Curtis, Mallet-Prevost, Colt & Mosle | New York | $735 | $635 | $685 | $560 | $280 | $360 |
| 2007 | Davis Polk & Wardwell | New York | | | | | | |
| 2007 | Debevoise & Plimpton LLP | New York | | | | | | |
| 2007 | Dewey & LeBoeuf | New York | | | | | | |
| 2007 | Epstein Becker & Green | New York | $675 | $280 | $475 | $440 | $155 | $280 |
| 2007 | Fried, Frank, Harris, Shriver & Jacobson | New York | | | | | | |
| 2007 | Greenberg Traurig, PA | New York | $850 | $300 | $500 | $505 | $175 | $310 |
| 2007 | Hughes Hubbard & Reed | New York | $825 | $595 | | $560 | $240 | |
| 2007 | Kaye Scholer | New York | | | | | | |
| 2007 | Kelley Drye & Warren | New York | $800 | $400 | | $500 | $255 | |
| 2007 | Kenyon & Kenyon | New York | | | | | | |
| 2007 | Kramer Levin Naftalis & Frankel | New York | | | | | | |
| 2007 | McKee Nelson | New York | $920 | $635 | $755 | $595 | $375 | $455 |
| 2007 | Paul, Weiss, Rifkind, Wharton & Garrison | New York | | | | | | |
| 2007 | Pillsbury Winthrop Shaw Pittman | New York | | | | | | |
| 2007 | Schulte Roth & Zabel | New York | $850 | $650 | $745 | $585 | $235 | $440 |
| 2007 | Seward & Kissel | New York | | | | | | |
| 2007 | Shearman & Sterling | New York | | | | | | |
| 2007 | Simpson Thacher & Bartlett | New York | | | | | | |
| 2007 | Stroock & Stroock & Lavan | New York | | | | | | |
| 2007 | Sullivan & Cromwell | New York | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2007 | Thacher Proffitt & Wood | New York | $785 | $525 | $700 | $495 | $275 | $365 |
| 2007 | Thelen | New York | | | | | | |
| 2007 | Wachtell, Lipton, Rosen & Katz | New York | | | | | | |
| 2007 | Weil, Gotshal & Manges | New York | | | | | | |
| 2007 | Willkie Farr & Gallagher | New York | | | | | | |
| 2007 | Gibbons PC | Newark, NJ | | | | | | |
| 2007 | McCarter & English LLP | Newark, NJ | $650 | $325 | | $395 | $205 | |
| 2007 | Sills Cummis Epstein & Gross | Newark, NJ | $650 | $350 | | $375 | $195 | |
| 2007 | Broad and Cassel | Orlando, Fl | $450 | $250 | $360 | $310 | $165 | $225 |
| 2007 | GrayRobinson, PA | Orlando, Fla | $500 | $175 | | $250 | $250 | |
| 2007 | Cooley Godward Kronish | Palo Alto, CL | $875 | $470 | | $555 | $250 | |
| 2007 | Ballard Spahr Andrews & Ingersoll | Philadelphia | | | | | | |
| 2007 | Cozen O'Connor | Philadelphia | $750 | $230 | $425 | $530 | $155 | $280 |
| 2007 | Drinker Biddle & Reath | Philadelphia | | | | | | |
| 2007 | Duane Morris | Philadelphia | $705 | $315 | $470 | $465 | $150 | $305 |
| 2007 | Fox Rothschild | Philadelphia | $595 | $240 | | $440 | $190 | |
| 2007 | Marshall, Dennehey. Warner, Coleman & Goggin | Philadelphia | $400 | $135 | | $300 | $120 | |
| 2007 | Montgomery. McCracken, Walker & Rhoads | Philadelphia | $575 | $320 | | $320 | $195 | |
| 2007 | Morgan, Lewis & Bockius | Philadelphia | $850 | $375 | | $575 | $200 | |
| 2007 | Pepper Hamilton | Philadelphia | $750 | $335 | | $425 | $200 | |
| 2007 | Saul Ewing | Philadelphia | $750 | $315 | $415 | $485 | $180 | $255 |
| 2007 | Schnader Harrison Segal & Lewis | Philadelphia | $750 | $240 | | $385 | $175 | |
| 2007 | White and Williams | Philadelphia | | | | | | |
| 2007 | Wolf, Block, Schorr and Solis-Cohen | Philadelphia | | | | | | |
| 2007 | Lewis and Roca | Phoenix | | | | | | |
| 2007 | Snell & Wilmer | Phoenix | $675 | $275 | | $390 | $170 | |
| 2007 | Buchanan Ingersoll & Rooney | Pittsburgh | $750 | $320 | | $460 | $150 | |
| 2007 | Kirkpatrick & Lockhart Preston Gates Ellis LLP | Pittsburgh | | | | | | |
| 2007 | Reed Smith | Pittsburgh | $825 | $350 | $525 | $510 | $200 | $350 |
| 2007 | Bullivant Houser Bailey | Portland, Ore | $500 | $225 | $275 | $350 | $150 | $220 |
| 2007 | Stoel Rives | Portland, Ore | $500 | $275 | $375 | $350 | $160 | $230 |
| 2007 | Stevens & Lee | Reading, PA | | | | | | |
| 2007 | Hunton & Williams | Richmond, VA | | | | | | |
| 2007 | LeClair Ryan | Richmond, VA | | | | | | |
| 2007 | McGuireWoods | Richmond, VA | | | | | | |
| 2007 | Williams Mullen | Richmond, VA | $600 | $300 | | $425 | $205 | |
| 2007 | Best Best & Krieger | Riverside, Calif | $495 | $290 | $390 | $350 | $160 | $235 |
| 2007 | Harris Beach | Rochester, NY | $475 | $250 | | $275 | $140 | |
| 2007 | Lowenstein Sandler | Roseland, NJ | $725 | $380 | | $395 | $205 | |
| 2007 | Luce, Forward, Hamilton & Scripps | San Diego | $725 | $325 | $475 | $450 | $220 | $280 |
| 2007 | Gordon & Rees | San Francisco | | | | | | |
| 2007 | Heller Ehrman | San Francisco | | | | | | |
| 2007 | Howard, Rice, Nemerovski. Canady, Falk & Rabkin | San Francisco | $775 | $495 | | $485 | $275 | |
| 2007 | Littler Mendelson | San Francisco | | | | | | |
| 2007 | Morrison & Foerster | San Francisco | | | | | | |
| 2007 | Sedgwick, Detert, Moran & Arnold LLP | San Francisco | | | | | | |
| 2007 | Townsend and Townsend and Crew | San Francisco | | | | | | |
| 2007 | Davis Wright Tremaine | Seattle | $695 | $300 | $423 | $390 | $170 | $250 |
| 2007 | Lane Powell Moss & Miller | Seattle | $515 | $300 | $370 | $300 | $205 | $255 |
| 2007 | Perkins Cole | Seattle | $805 | $205 | | $500 | $145 | |
| 2007 | Armstrong Teasdale | St Louis | $450 | $295 | | $295 | $165 | |
| 2007 | Bryan Cave | St Louis | $695 | $320 | $490 | $495 | $165 | $295 |
| 2007 | Husch & Eppenberger | St Louis | $425 | $190 | $295 | $260 | $130 | $175 |
| 2007 | Lewis, Rice & Fingersh | St Louis | $425 | $240 | | $295 | $130 | |
| 2007 | Thompson Coburn | St Louis | $580 | $265 | | $370 | $170 | |
| 2007 | Bond, Schoeneck & King | Syracuse, NY | $435 | $290 | $295 | $250 | $140 | $175 |
| 2007 | Hiscock & Barclay LLP | Syracuse, NY | $375 | $220 | $280 | $250 | $160 | $180 |
| 2007 | Carlton Fields | Tampa, Fla | $600 | $280 | $405 | $375 | $190 | $245 |
| 2007 | Fowler White Boggs Banker | Tampa, Fla | $500 | $230 | $340 | $325 | $150 | $210 |
| 2007 | Shumaker, Loop & Kendrick | Toledo, Ohio | $465 | $200 | $305 | $360 | $180 | $220 |
| 2007 | Akin Gump Strauss Hauer & Feld | Washington | | | | | | |
| 2007 | Arent Fox | Washington | $675 | $395 | | $440 | $240 | |
| 2007 | Arnold & Porter | Washington | | | | | | |
| 2007 | Covington & Burling | Washington | $800 | $510 | | $525 | $240 | |
| 2007 | Crowell & Moring | Washington | | | | | | |
| 2007 | Dickstein Shapiro Morin & Oshinsky | Washington | $825 | $425 | $550 | $440 | $225 | $360 |
| 2007 | Hogan & Hartson | Washington | $850 | $300 | $590 | $525 | $150 | $370 |
| 2007 | Holland & Knight | Washington | | | | | | |
| 2007 | Howrey | Washington | | | | | | |
| 2007 | Jones Day | Washington | | | | | | |
| 2007 | Patton Boggs | Washington | $920 | $320 | $525 | $520 | $205 | $385 |
| 2007 | Wiley Rein | Washington | | | | | | |
| 2007 | Williams & Connolly | Washington | | | | | | |
| 2007 | Wilmer Cutler Pickering Hale and Dorr | Washington | $1,000 | $475 | | $495 | $215 | |
| 2007 | Jackson Lewis | White Plains, NY | $575 | $235 | | $450 | $210 | |
| 2007 | Womble Carlyle Sandridge & Rice | Winston-Salem, NC | $575 | $290 | $425 | $370 | $195 | $265 |

LAW.COM'S FREE
E-Newsletters!

browse a BRIGHTER future
2007 Legal Recruiter Digital Directory - FREE!

Hedge Fund
General Counsel
Summit

# LAW.COM

Select 'Print' in your browser menu to print this document.

Copyright 2008 ALM Properties, Inc. All rights reserved.

Page printed from: http://www.law.com

Back to Article

## Large Firms' Billing Rates Continue to Climb

Leigh Jones
12-11-2007

Attorney billing rates shot up in 2007, with approximately three-quarters of the law firms that participated in *The National Law Journal*'s annual survey boosting the amounts they charged for partner and associate services.

At the same time, the average firmwide billing rates, which included partner and associate rates, climbed by 7.7 percent, while the firmwide median rates rose by 7.1 percent, compared to the firms that reported billing data in 2006.

Despite grousing by clients about ever-higher lawyers' fees, 75.2 percent of the firms providing billing information this year and last charged more this year than they did in 2006. The figure represents law firms that increased the high end of the billing range charged by their partners and associates.

This year's percentage of law firms increasing their high rates fell shy of last's year's percentage of 79.3 percent. But the 2007 uptick, in addition to first-year associate raises to $160,000 at elite firms, did not sit well with many clients.

"There's always been frustration. Now there's anger," said Susan Hackett, general counsel for the Association of Corporate Counsel

This year, 119 law firms responded to questions about billing rates that were included in the *NLJ*'s 2007 survey of the nation's 250 largest law firms. The survey questions were asked of approximately 300 law firms. Last year, 139 firms answered questions about their billing rates, including 109 firms that responded this year.





Among those firms reporting average and median rates both this year and last year, the average of the average firmwide billing rate increased to $348 per hour from $321 in 2006, and the average of the median firmwide billing rate this year was $347, compared to $324 in 2006.

Two law firms reported charging clients $1,000 an hour -- but one later insisted that its initial report was in error and that its actual top rates were considerably lower.

At Greenberg Traurig, the range for partners first reported was between $300 and $1,000 an hour, with a partner billing average of $490 and a median of $500. In 2006, the billing rate for partners at Greenberg Traurig ranged from $270 to $850, with an average rate of $460 and a median of $475. When asked about its rates, however, a

spokeswoman for the law firm said that it should have reported its highest billing rate in 2007 at $850.

The other law firm reporting a $1,000-an-hour rate was Wilmer Cutler Pickering Hale and Dorr, where the partner billing range ran from $475 to $1,000. A spokeswoman for the firm declined to identify any partner who charged the top rate

Only one firm among those surveyed reported a decrease both in its partner and associate fees. At Sutherland Asbill & Brennan last year, partners billed as much as $845 an hour; this year, the high end of its partner billing range fell to $715. The Atlanta firm reported the high end of its associate range at $415, compared with $530 in 2006. Again, the firm attributed the anomaly to a reporting error. A spokeswoman said that the high end of the firm's partner range actually was $890, and that the high end for the associate range was $515.

The vast majority of the law firms that answered questions about their billing practices reported increasing their partner high rates, or at least leaving them the same as last year. A full 91.7 percent of the 109 firms that responded in both years raised their high partner rates, and among those firms, 7 percent left associate high rates the same as last year. In addition, 12 percent of the firms that boosted partner high rates reduced associate high rates at the same time.

The profession appeared to deepen its embrace of billing variations and alternatives. Of the 47 law firms that provided such data for this year and last, 34 percent increased the portion of their revenues earned through variations to their standard rates. The variations included discounts and blended rates that were relative to the firms' standard billable hour rates. Alternatives involved departures from billing by the hour, including fixed or flat fees, hybrid fees and contingency fees.

Some 31.9 percent of those firms reported the same portions of their revenues through variations and alternatives this year as they did in 2006, while 4.2 percent decreased the percentage of revenues they received through variations and alternatives.

Bruce Elvin, associate dean at Duke Law School, expects clients to increase their reliance on varied billing structures. Elvin, who teaches a course on the business and economics of law firm practice, added that smaller firms with lower overhead likely will benefit from the higher fees that big firms are charging. In addition, clients will handle more of their legal work themselves.

"As rates go up, clients assess more closely the distribution of work and who's doing it," Elvin said.

The law firm with the highest associate rate was McKee Nelson, which reported a rate on the high end of $595. Its associate range started at $375. The firm's average billing rate was $446; its mean was $455.

McKee Nelson reported fielding 224 attorneys this year, representing a 30.2 percent growth rate for the law firm since 2006. In 2007, it added 32 associates. But in light of the slowdown in private-equity and structured-finance work, the firm recently initiated voluntary, temporary "sabbaticals" for associates.

Those cutbacks and the reassignments of other lawyers have affected about 29 associates, said McKee Nelson partner William Nelson.

Nelson said that the attorneys performing credit-market work billed by the project, not by the hour. "Rates are not an issue for us," he said. "Our clients wouldn't hire us if they didn't think our rates for services were fair."

That logic may hold true for some rates, but not for all, said Hackett of the Association of Corporate Counsel.

"The problem isn't the $1,000-an-hour lawyer who's worth it," she said. "It's the $450-per-hour associates who aren't."

**Related chart:**

Billing Rates by Associate Class

**Additional information:**

Nationwide Sampling of Law Firm Billing Rates

Alternative Billing Variants

**EXHIBIT H**

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:10-cv-00131-MSK-KMT**

TANISHA TANKERSLEY,

     Plaintiff,

     v.

CONTINENTAL COLLECTION AGENCY,

     Defendant.

## DECLARATION OF MATTHEW R. OSBORNE IN SUPPORT OF PLAINTIFF'S OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE ACCEPTANCE OF OFFER OF JUDGMENT

I, Matthew R. Osborne, declare and state as follows:

1. I am an attorney in good standing and have been admitted to practice in state and federal courts located in Colorado.

2. I am active in the Colorado Bar Association, and also a member in good standing of the National Association of Consumer Advocates (www.naca.org), the National Association of Consumer Bankruptcy Attorneys and the American Bar Association.

3. I have personally represented hundreds of consumers in all aspects of litigation including the Fair Debt Collection Practices Act (FDCPA), the Truth in Lending Act (TILA), the Fair Credit Reporting Act (FCRA), the automatic stay as set forth in 11 U.S.C. 362, and the Colorado Consumer Protection Act (CCPA).

4. I have been asked by counsel to review statement of time submitted for this case and find that the time incurred by Plaintiff's attorney is

1

reasonable given the complexity of issues presented and research necessary to initiate and prosecute a consumer's claims under the FDCPA.

5. Further, based upon my observations, experience and research into the current rates for Consumer Lawyers within the community, the hourly rates requested by Krohn & Moss are commensurate with experience and in accord with the prevailing rates for Consumer Lawyers practicing under the FDCPA in the legal community.

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct. This declaration was executed on November 12, 2010 at Denver, Colorado.

Matthew R. Osborne, Esq.
Matthew R. Osborne P.C.
2055 S. Oneida St, Ste 370
Denver, CO 80224
(303) 759-7018

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:10-cv-00131-MSK-KMT**

TANISHA TANKERSLEY,

     Plaintiff,

         v.

CONTINENTAL COLLECTION AGENCY,

     Defendant.

---

**DECLARATION OF HOLLI D. COLBURN IN SUPPORT OF PLAINTIFF'S**
**OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO**
**THE ACCEPTANCE OF OFFER OF JUDGMENT**

---

I, Holli D. Colburn, Esq., declare and state as follows:

1. I have been licensed as an attorney in Colorado since 2002.

2. In addition to being licensed in Colorado, I have been licensed in Georgia since 1997, where my license is currently on inactive status, and have been admitted to practice before the Northern District of Georgia and 11th Circuit Court of Appeals since 1998, and this Court since 2001.

3. I am an active member of the Colorado Bar Association, including the Litigation Section, and the Colorado Plaintiff Employment Lawyers Association.

4. My practice has been devoted to civil litigation for at least 12 years.

5. I have reviewed the hourly rates requested by the attorneys at Krohn and & Moss in this case.

6. Based upon my observations, experience and research into the current rates for local lawyers, the hourly rates requested by Krohn & Moss are

reasonable and in accord with the prevailing rates for attorneys within the Denver area legal community.

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct. This declaration was executed this 12th day of November 12, 2010, at Lakewood, Colorado.

Holli D. Colburn, Esq.
Law Office of Holli D. Colburn
P.O. Box 9025
Denver, CO 80209
(303) 522-1140
(303) 496-0072 (fax)
Holli@ColburnLaw.net

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:10-cv-00131-MSK-KMT**

TANISHA TANKERSLEY,

      Plaintiff,

             v.

CONTINENTAL COLLECTION AGENCY,

      Defendant.

---

**DECLARATION OF CRAIG THOR KIMMEL IN SUPPORT OF PLAINTIFF'S**
**OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO**
**THE ACCEPTANCE OF OFFER OF JUDGMENT**

I, Craig Thor Kimmel, Esq., declare and state as follows:

1.  I am an attorney in good standing and have been admitted to practice in state courts located in Pennsylvania, New York and Massachusetts, and Federal Courts in those states, as well as Federal Courts in Texas, Arkansas, Oklahoma and Colorado.

2.  I am active in the Philadelphia Trial Lawyers Association, the Pennsylvania Bar Association and the New York Bar Association, and also a member in good standing of the National Association of Consumer Advocates (www.naca.org) and the American Bar Association.

3.  Since 1997, I have served as legal consultant to the Pennsylvania House of Representatives, Consumer Affairs Committee, and have been credited with writing the first Computer Lemon Law bill, which has served as a model not only for Pennsylvania, but Illinois, Connecticut and California.

4.  I have also worked with the Commonwealth in writing the only two amendments to the Pennsylvania Lemon Law: inclusion of leased vehicles and notice provisions involving reacquired vehicle sales.

5.  Since 1989, I have personally represented many thousands of consumers in all aspects of litigation including numerous jury trials and arbitrations as well as class actions.

6.  I have also successfully briefed and argued cases before the Untied States Court of Appeals for the Third Circuit in matters of national impact, specifically relating to 16 CFR Part 703 and the American Arbitration Act of 1929.

7.  I have been interviewed more than 200 times by newspapers, magazines, television and radio, as well as being regularly featured as consumer correspondent on various programs and talk shows.

8.  As an expert in the field of warranty litigation, I have presented Continuing Legal Education seminars for the Bar and spoken for professional organizations across the tri-state region more times than I can recall.

9.  I have been asked by counsel to review statement of time submitted for this case and find that the time incurred by Plaintiff's attorney is reasonable given the complexity of issues presented and research necessary to initiate and prosecute a consumer's claims under the FDCPA.

10. Further, based upon my observations, experience and research into the current rates for Consumer Lawyers within the community, the hourly rates requested by Krohn & Moss are commensurate with experience and in accord with the prevailing rates for Consumer Lawyers practicing under the FDCPA in the legal community.

I declare under penalty of perjury under the laws of the State of Pennsylvania that the foregoing is true and correct.  This declaration was executed on ___*November 11*___ _____, 2010 at Ambler, Pennsylvania.

_____
Craig Thor Kimmel, Esq.
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002-4514
(215) 540-8888

3

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:10-cv-00131-MSK-KMT**

TANISHA TANKERSLEY,

      Plaintiff,

          v.

CONTINENTAL COLLECTION AGENCY,

      Defendant.

---

**DECLARATION OF STEVEN SOLOMON IN SUPPORT OF PLAINTIFF'S
OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO
THE ACCEPTANCE OF OFFER OF JUDGMENT**

---

I, Steven Solomon, Esq., declare and state as follows:

1. I am an attorney licensed in the State of California and am admitted to practice before the federal Northern District of California, the federal Ninth Circuit Court of Appeals, and the United States Supreme Court.

2. For twenty-five (25) years, I practiced in the area of consumer rights with consumer disputes of individuals and small businesses involving breach of warranty ("lemon law"), credit, debt collection, employment, building contractors, fraud, and breach of contract. I obtained two of California's largest lemon law judgments for physically disabled clients.

3. I had eight published appellate decisions out of almost 50 appeals handled, including precedents affecting the rights of those involuntarily committed to mental institutions and the rights of de facto parents in juvenile dependency proceedings. (*In re Elsie Smith* (1986) 187 Cal.App.3d 903; *In re Andre G.* (1989) 210 Cal.App.3d 62; *In re Rachael C.* (1991) 235 Cal.App.3d 1445; and *In re Matthew C.* (1993) 6 Cal.4th 386.).

4. I had articles published in legal journals and was quoted in larger media articles such as in Jan. 1995, *Smart Money* magazine article on lemon laws and in Aug. 1998, *New York Times* article about gag clauses in lemon law settlement agreements. Another case, involving rental car companies' sale of salvaged cars, was featured in a 2002 *Consumer Reports* issue and broadcast that year on both local and national NBC news shows.

5. My practice was highlighted in the Santa Clara County Bar Assoc. Journal (Spring 1995), and featured on KGO TV Channel 7 News' "7 On Your Side,"

KRON's "Contact 4" and KPIX's "Consumer Watch" consumer advocacy segments.

6.   From 1994-2007, I was invited to testify before the California Legislature on the lemon law and other consumer laws, and advised legislative staff.

7.   During the course of my consumer litigation practice I developed extensive knowledge regarding the efficient handling of consumer cases and familiarity with the prevailing hourly rates being awarded and charged to Consumer Clients all over the country for this kind of work by consumer litigation practitioners.

8.   I was asked by Plaintiff's counsel to review the statement of time submitted for this case and fee petition, and find that the time incurred by Plaintiff's attorneys in this case was reasonable given the complexity of issues presented and the research necessary to initiate and prosecute a consumer's claims under the FDCPA.

9.   Further, based upon my observations, experience and research into the current rates for Consumer Lawyers, the hourly rates requested for the attorneys of Krohn & Moss, Ltd. are commensurate with their experience and in accord with the prevailing rates for Consumer Lawyers practicing under the FDCPA.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  This declaration was executed on November 11, 2010, at San Rafael, California.

Steven Solomon, Esq.

**EXHIBIT I**

# INVOICE

## ATTORNEY'S DIVERSIFIED SERVICES

1424 21st Street
Sacramento, CA 95811
(916) 441-4396 FAX: (916) 443-1162

**Attorney's Diversified Services**
**www.attorneysdiversified.com**
IRS NO. 20-0709641

| Customer | Date | Invoice |
|---|---|---|
| 3239882400 | 08/19/10 | 0S371612-01 |

**Ship To:**

KROHN & MOSS, LTD.

**ATTN: IMMA ALMOURZAEVA**
10474 SANTA MONICA BLVD., STE.401
LOS ANGELES, CA 90025

Phone: (323) 988-2400     Client Type: 01
Fax: (866) 431-5575

*Ordered By:*
KROHN & MOSS, LTD.

**ATTN: IMMA ALMOURZAEVA**
10474 SANTA MONICA BLVD., STE.401
LOS ANGELES, CA 90025
Phone: (323) 988-2400     Client Type: 01

## CASE INFORMATION

Court: UNITED STATES DISTRICT COURT
Depo Date:
Case #: 110CV00131MSKKMT
Case Name: TANISHA TANKERSLEY
vs  CONTINENTAL COLLECTION AG

## VITAL INFORMATION

SERVEE: *T-MOBILE*
ADDRESS: *2730 GATEWAY OAKS DR.,*
*SACRAMENTO, CA 95833*
FIRM'S FILE NUMBER: *TANKERSLEY V. CONT. COLL*
CLAIM NUMBER:
POLICY ID NUMBER:
INSURED:
DATE OF LOSS:

| Description | Units | Rate | Amount | Tax |
|---|---|---|---|---|
| CSC SERVICE | 1 | 24.75 | 24.75 | N |

Regarding: **T-MOBILE at 2730 GATEWAY OAKS DR., STE 100, SACRAMENTO CA 958330000. SUPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

REMARKS:

SUBTOTAL        $        24.75     -

**TOTAL DUE**    $        **24.75**

**Bill to:**   KROHN & MOSS, LTD.

**ATTN: IMMA ALMOURZAEVA**
10474 SANTA MONICA BLVD., STE.401
LOS ANGELES, CA 90025

| Customer | Date | Invoice |
|---|---|---|
| 3239882400 | 08/19/10 | 0S371612-01 |

**TOTAL DUE  $    24.75**
**PAYMENT DUE DATE: 08/29/10**

*Remit Payment to:*
**Attorney's Diversified Services**
**PO Box 2799**
**Sacramento, CA  95812**

916 441-4396  FAX 916 443-1162.
IRS NO. 20-0709641

**To pay by credit card, mail, fax or call (916) 441-4396**

CARD NUMBER: _____

NAME ON CARD: _____

TYPE OF CARD:  VISA   MASTERCARD   AMERICAN EXPRESS
(CIRCLE ONE)

EXPIRATION DATE: _____/_____

TERMS: 10 DAYS NET OF INVOICE DATE - ACCOUNTS OVER 30 DAYS WILL BE SUBJECT TO 3.0% MONTHLY
INTEREST - IN THE EVENT OF DEFAULT, COLLECTION FEES AND/OR ATTORNEY FEES WILL BE ASSESSED.

## PROOF OF SERVICE

I, Nicholas J. Bontrager, state the following:

I am employed in Los Angeles, California; I am over the age of 18 and am not a party to this action; my business address is 10474 Santa Monica Blvd., Suite 401, Los Angeles, California 90025.  On December 6, 2010, I served the following documents:

**Plaintiff's Opposed Motion for Attorneys' Fees and Costs Pursuant to the Acceptance of Offer of Judgment**

On the parties listed below:

Paul Spivak
1720 S. Bellaire Street, Suite 801
Denver, CO 80222
paul@contcollections.com

By the following means of service:

[X]   **BY ELECTRONIC CASE FILING:** I transmitted the document(s) listed above electronically to the e-mail addresses listed above via the Court's CM/ECF system which provides electronic notice of filing to the party listed above.

[X]   **STATE:** I declare under penalty of perjury under the laws of Ohio that the above is true and correct.

Executed on December 6, 2010, at Los Angeles, California.

By___/s/ Nicholas J. Bontrager_____
        Nicholas J. Bontrager