THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:10-cv-00131-MSK-KMT

Tanisha Tankersley,

    Plaintiff,

    v.

Continental Collection Agency,

    Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

---

Defendant, through its attorney, objects to the award of attorney's fees sought by Plaintiff, and in support of its objection, submits the following Memorandum of Points and Authorities:

**I. BACKGROUND**

The more than one hundred page document filed in support of Plaintiff's Motion for Attorney Fees is emblematic of the services performed by Plaintiff's counsel ("K&M"). On the surface, what you see is a highly professional brief containing perfectly reasonable arguments. Highly skilled and experienced consumer lawyers are seeking a reasonable lodestar amount of attorney fees for the valuable service of protecting a consumer from abusive debt collection practices. Having prevailed in this consumer protection action by virtue of defendant's confession of judgement, K&M assert that the court must richly award them so that they will have an incentive to continue performing this important public service.

1

Defendant is asking the Court to exercise the discretion given to it in determining attorney fees awards and to look beyond the lodestar amount of hourly rate times hours billed. Defendant is asking the Court to closely examine this case and K&M's representation of its client. It is Defendant's hope that the Court is willing to look beneath the veneer of this lawsuit. The veneer is designed to make it appear as if the lawsuit was hand-made by master craftsmen. Defendant believes that under that surface is actually a lawsuit mass-produced, quickly and inexpensively, on an assembly line. And if one looks even more closely at this case, not just at its veneer, one questions whether this really is the type of case that the court wants to incentivize attorneys to file.

The Federal Fair Debt Collection Practices Act ("FDCPA") creates an uneven playing field in its attorney's fees provisions. Plaintiff is awarded fees if she prevails, but Defendant must establish bad faith in order to be awarded its attorney fees.[1] In essence, the plaintiff (and especially her attorneys) has something to win and nothing to lose and the defendant can only hope not to lose more than the costs of its defense. Regardless of the merits of the claim, it makes economic sense for Defendant to pay Plaintiff to settle. The court must be on guard against attorneys who would attempt to take advantage of this situation for their personal financial gain.

## II. DEFENDANT AGREED TO PAY ATTORNEY FEES INCURRED BY PLAINTIFF BUT NONE WERE INCURRED.

There is no better evidence for Defendant's assertion that K&M's work product is mass-produced than the fact that Plaintiff does not even address the language in the

---

[1] As a collection agency, Defendant is acutely aware of the fact that an award of attorney's fees is not the same as actually receiving monetary reimbursement. The strategic benefit conferred upon Plaintiff by the unequal attorney fees provision is only slightly diminished by the remote chance that Defendant will both receive an award of attorney fees and actually collect that award from the Plaintiff.

2

judgment that states Defendant will pay reasonable costs and attorney fees *incurred* by Plaintiff. The attorney fee provision in the FDCPA, 15 U.S.C. §1692(k)(a), does not have a requirement that the fees need to be incurred by the consumer. K&M apparently paid no attention to the fact that the language used in Defendant's offer to pay attorney fees differed from the statute. The same brief for attorney fees that has no doubt been used in countless prior lawsuits was printed out and filed as if the judgment in this case contains no requirement that the attorneys' fees be incurred by the Plaintiff. The only thing said about the amount of fees incurred by Plaintiff is in the concluding paragraph of Plaintiff's Memorandum: "Plaintiff was represented free of charge by Krohn & Moss, Ltd....".

Is it Plaintiff's contention that the FDCPA mandates that Plaintiff be awarded attorney fees whether incurred by Plaintiff or not, and the parties cannot agree to settle on different terms? The answer to this question is unknown because K&M did not pay attention to the fact that this case has an element to it that may differ from its thousands of other cases

In common usage, one incurs expenses if one becomes liable or subject to pay for them. If Plaintiff was represented free of charge, without obligation to pay for that representation, Plaintiff has incurred no attorney fees. It is even questionable that Plaintiff incurred any costs in this action. Defendant would like to see evidence that Plaintiff paid the filing fee or any of the other costs for which she seeks reimbursement.

Given that Plaintiff has supplied no reason why she should receive an award of attorney's fees and costs when there were no fees or costs incurred, the Court should reject the Plaintiff's Motion for costs and attorneys' fees.

## III. THE COURT HAS WIDE DISCRETION TO AWARD ATTORNEY FEES IN AN AMOUNT APPROPRIATE FOR THE ACTUAL FACTS OF EACH INDIVIDUAL CASE.

Even if the court is inclined to award attorney fees to Plaintiff despite the fact that Plaintiff did not actually incur any fees, there are many reasons to conclude that the lodestar amount claimed by Plaintiff is not a reasonable amount. There is no case discussing attorney fee awards under the FDCPA, or other similar consumer protection statutes referred to in Plaintiff's memorandum, that contradicts the basic proposition that the court has wide discretion to award attorney fees reasonable for that particular case. In reviewing a plaintiff's claim that the trial court abused its discretion in awarding only $500.00 for attorney's fees in an FDCPA case despite evidence of a lodestar amount of nearly $10,000.00, the Fourth Circuit Court of Appeals stated:

> ... the statute makes clear that calculation of the appropriate award must be left to the district court. First, the concept of reasonableness – the statutory centerpiece of the Sec. 1692 k fee award – itself implies that the fee calculation is inextricably linked to the facts and circumstances of the underlying litigation...Moreover, the statutory language announces a clear intent to allow district courts wide latitude in the calculation of appropriate fee awards: a "reasonable" fee is to be "determined by the district court", without further statutory qualification. *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 628-629, (4th Cir.1995).

While the lodestar amount may be a starting point for the court in its analysis of an appropriate fee award, "...Sec.1692k does not mandate a fee award in the lodestar amount. If the concept of discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances." *Carroll* at 629. It is Defendant's contention that the facts in this case make it appropriate for the court to consider other factors besides Plaintiff's lodestar claim.

4

## IV. HOW THIS CASE AROSE AND WAS PROSECUTED BY K&M SUPPORT A DECREASE OF THE ATTORNEY FEE AWARD FROM THE LODESTAR AMOUNT.

In her complaint Plaintiff alleges several violations of the FDCPA. First, she alleges that Defendant disclosed to her father that it was attempting to collect a debt from Plaintiff, and that Defendant continued to call her father's business phone after Defendant had been told not to call that number. Plaintiff alleges that Defendant caused her phone to "ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff." Defendant also alleges that Defendant engaged in conduct that harassed, abused and oppressed Plaintiff.

Defendant believes that it is important for the Court to examine the evidence in support of their client's claim that K&M's possessed at the time of filing this lawsuit. Defendant is aware that it has confessed judgment, and it is not its intention to have the court examine the evidence to determine Defendant's liability for the FDCPA violations alleged. Rather Defendant wants to show the court how little evidence, and how little verification of that evidence, K&M needs before it is willing to file a lawsuit free of charge.

Attached as Exhibit A is Plaintiff's Rule 26 disclosure made to Defendant. Exhibit B is Defendant's interrogatories to Plaintiff, and Exhibit C is Plaintiff's responses. Finally, Exhibit D is Defendant's requests for production to Plaintiff, and Exhibit E is Plaintiff's responses. Assuming that Plaintiff fulfilled her obligation to fully disclose all relevant information to Defendant, these attached documents contain all of Plaintiff's evidence. K&M's billing records show the extent to which they sought to investigate the case and verify the evidence.

Based upon Plaintiff's disclosures and responses to Defendant's discovery requests, Plaintiff is able to recall one day on which she spoke with representatives of Defendant. She indicates there may have been other communications but cannot remember the dates. She claims that she made an offer to settle the debt by making monthly payments and asserts that the Defendant unreasonably refused to accept her offer. Apparently, given that there are no other allegations, that refusal is the basis for the claim that Defendant abused and harassed her. There is nothing in any of Plaintiff's disclosures relating to the allegation Defendant caused her phone to ring continuously. In support of her claim that Defendant disclosed to her father that Defendant was attempting to collect a debt from Plaintiff, there is attached to her Rule 26(a)(1) disclosures a signed statement purporting to be that of her father regarding his communications with Defendant. There are no phone records for either Plaintiff or her father.

It is important to note that Plaintiff's complaint alleges that the phone calls made by Defendant to Plaintiff and her father were made to cellular phones. There would be a record available to Plaintiff of all calls from Defendant to her. If Defendant were calling repeatedly and continuously, there would be a record of incoming or missed phone calls on that cellular phone that could be accessed. Also, records for her father's business cellular phone would be available. K&M obtained no phone records prior to commencing litigation.

According to its billing records, no attorney for K&M actually spoke to the Plaintiff until almost three months after the complaint was filed. There is no indication in the record that the paralegal that did speak to the Plaintiff also spoke to the key witness, the Plaintiff's father. The father's statement on its face appears to have some problems

for Plaintiff. For instance, the father does not say that he distinctly recalls that Defendant made an improper disclosure regarding its attempt to collect the debt. His statement is more equivocal: "... I asked what it was regarding (Defendant's phone call asking for the Plaintiff), I believe they responded it was about a debt. I gave my phone to Tanisha." The Plaintiff's father does not claim that he stated in this initial phone call that he wanted no further calls made to that number. He does allege that Defendant called his work cellular phone six months after the first call, and during the second call he told Defendant not to use that phone number. However, he does not claim that Defendant again called his number after being told not to. Given the differences between the violations of the FDCPA alleged and the father's statement, it would seem to be important to seek clarification from the father about what exactly took place.

Defendant believes the key to understanding this case is the fact that K&M was willing to file a lawsuit in federal court, with a jury demand, without any charge for their services to Plaintiff, based upon such scant, unverified evidence. Why would they be willing to invest their time in prosecuting this case without first attempting to make sure that their client is telling the truth, and that evidence is available sufficient to meet their burden of proof? The answer to that question is that K&M, having filed thousands of these actions, knows that there is no need to investigate the facts or make sure there is evidence. By filing an action in federal court with a jury demand (in effect, maximizing the cost of litigation), K&M ensures that the cost to defend the lawsuit will be so high that defendants will be motivated to settle regardless of how weak the Plaintiff's case.

Further insight into how K&M handle these cases is shown in an email exchange between Plaintiff's counsel, Nicholas Bontrager, and counsel for Defendant, attached as

Exhibit F. After the complaint was served and before it was answered, counsel for Defendant asked Mr. Bontrager for a settlement offer. The settlement offer is for Plaintiff to receive $1000.00 plus satisfaction of the claim Defendant was attempting to collect and $3000.00 payable separately to K&M. Because Plaintiff did not assert a claim for actual damages, $1000.00 is the maximum award to which she is entitled under the FDCPA -- the demand to also satisfy the debt would give more to Plaintiff than she is entitled under the law. According to its own billing records, which, as Defendant will argue below, are exaggerated, there were nowhere near $3000.00 in attorney's fees at the point that Plaintiff made this settlement offer.

One normally thinks of a settlement offer as a compromise – an agreement to accept an amount less than could be obtained through litigation. K&M's settlement offer is for an amount in excess of what both Plaintiff and her attorneys are entitled. The fact that K&M believe they are in a position to offer such a settlement is a consequence of the advantages they enjoy under the FDCPA. It is Defendant's contention that K&M abuses that advantage by filing these cases as part of an attempt to unjustly enrich itself at the expense of defendant collection agencies.

To award all of the attorney's fees requested by Plaintiff is equivalent to giving the court's sanction to the lack of investigation performed by K&M prior to filing this lawsuit and to its attempt to unjustly enrich itself. In the exercise of its discretion, it is appropriate for the court to substantially reduce the fee award from the lodestar amount. Such a reduction would serve as a statement from the Court to K&M that it does not approve of filing cases without making an attempt to confirm the truthfulness of the

allegations, and that is does not approve of attempts to extort settlements in excessive amounts.

## V. K&M FILED THIS LAWSUIT PRIMARILY IN PURSUIT OF ITS OWN INTERESTS, NOT THOSE OF ITS CLIENT.

In Plaintiff's responses to Defendant' interrogatories, she claims that as a result of the phone conversation in which Defendant refused to accept her settlement offer, she contacted K&M after learning about them on the internet. What we are expected to assume is that Plaintiff sought help from K&M regarding her claims against Defendant for violations of the FDCPA. What we are not supposed to think about is the possibility that Plaintiff actually contacted K&M for advice about what to do with the debt collection claim and somehow emerged with a federal court FDCPA action. K&M would prefer for us to assume that Plaintiff had no concerns regarding the debt, just with the actions of the collection agency. Regardless of the reason Plaintiff contacted K&M, what becomes obvious right from the start is that this litigation is primarily about K&M's attorney fees. The attorney's fee claims exceeds the plaintiff's claim for statutory damages by the time the case is filed.

At the settlement conference on this case held April 30, 2010, conducted by Magistrate Tafoya, Plaintiff learned that between the time she contacted K&M and the date of the conference, the co-debtor on the claim Defendant was attempting to collect had settled the debt in full. Upon learning that there was no longer a debt claim, the Plaintiff told Magistrate Tafoya that she would be willing to dismiss her FDCPA claims without receiving any monetary compensation. However, K&M still insisted on being paid an amount in excess of what Defendant would agree to pay them. At that point, it could be said that this case became exclusively about K&M's attorney's fee claim.

Given the Plaintiff's position at the settlement conference, it is hard to believe that when she contacted K&M she was primarily concerned about Defendant's conduct as opposed to the fact that there was a debt claim against her. Is it possible that the Plaintiff, distressed about how to handle the debt claim, contacted the Consumer Law Center, K&M, for help and advice about that debt? Perhaps it was at K&M's website, where Plaintiff would learn that she could receive $1000.00 from the collection agency if it had done any of the listed prohibited acts, that Plaintiff decided that she had an FDCPA case to pursue. K&M must understand that, especially because their legal service is offered free of charge, there is a real possibility that a potential plaintiff might embellish her story about the collection agency so that the agency will be sued. What better means is there to gain an advantage against the agency in regard to a debt claim? But instead of exercising caution to ensure that their plaintiffs have legitimate cases, cases worthy of a federal court and jury's time, K&M files suits with virtually no confirmation of the plaintiff's allegations.

Given the extent to which K&M attempts to enrich themselves in this process, it is fair to ask whether K&M's goal is to file as many of these actions as they can, no matter how weak or lacking the evidence. Is K&M truly motivated by the lofty desire to protect consumers from abusive debt collection agencies? Or is the reality a little less lofty -- filing thousands of lawsuits primarily designed as vehicles for K&M to create claims for attorney's fees.

One disturbing aspect of a case such as this in which the attorney's fees claim overshadows the Plaintiff's damages, is that the attorney's fee demand actually puts K&M into a conflict of interest position with their client. It is possible that K&M would

10

have been able to negotiate a better settlement for their client if they did not demand so much for themselves. They can pretend that the settlement of the client's claim and their attorney's fees demands are two entirely separate matters. But from the perspective of the Defendant, there is only one settlement amount. In evaluating whether it makes economic sense to settle versus litigate, it does not matter to the Defendant if the money goes to the Plaintiff or her attorneys. In particular, demanding for themselves an amount of fees in excess of what could be justified by their own records, K&M could jeopardize a settlement on favorable terms to their client. K&M and their client are, in effect, competing for the same pool of settlement dollars. K&M's self-interested pursuit of excessive fees puts it into a conflict of interest position with their client.

It is also difficult to see how it is in Plaintiff's best interest, as opposed to K&M's best interest, to have this case filed in federal court. This case involves simple factual allegations. It could have been brought in the county court of Plaintiff's hometown, Colorado Springs. It would have cost less to file and required much less travel. Also, the Plaintiff was at risk of having to pay Defendant's costs if she lost in court, and those costs would be much greater in a federal versus county court action. K&M no doubt have a ready list of reasons for why it was important to file in federal court. It is Defendant's contention that those reasons are part of the veneer of this case, not its substance. The substantive reason is that it was in K&M's best interest to be in federal court. The client is a necessary appendage, but this lawsuit is primarily for the benefit of K&M.

On page nine of their memorandum in support of the fee claim, K&M says about the FDCPA: "The attorney's fee provision is in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to the potential legal

costs." That aim of the statute has certainly been fulfilled. In fact, the question is whether it has become too easy to find an attorney willing to file a FDCPA claim. It is Defendant's contention that the fee award, if any, to Plaintiff should be limited as a disincentive to filling FDCPA cases without careful investigation of the Plaintiff's allegations.

## VI. K&M'S BILLING RECORDS DO NOT ACCURATELY REFLECT THE ACTUAL AMOUNT OF TIME SPENT BY K&M ON THIS CASE.

Defendant concedes that K&M's billing records, on their face, reflect what could be a reasonable amount of time for an attorney and his staff to spend on this case. For instance, if an attorney does not routinely handle these cases and must spend time at each and every step carefully ensuring everything is being done, then K&M's claim would be reasonable. K&M's billing records could even be said to be a model billing record. There is time spent on every possible thing that a conscientious attorney should do in handling this case (with the exception of investigating their client's claim, as discussed above), and each individual item, if not thought about too much, seems to be limited to a reasonable amount of time. It is Plaintiff's contention that the reality in this case is different from the model billing record presented.

K&M's records are not kept for the actual purpose of billing a client. There is no client-based need to try to keep the costs down. K&M's records are kept primarily to justify as large a fee as they can possibly obtain from the Defendant. Even though K&M has filed thousands of FDCPA actions, we are expected to believe that the firm has not developed efficient systems to quickly process these claims. We are not supposed to assume that K&M has all necessary forms prepared with only a quick customization needed for each client. We are expected to rely on K&M trustworthiness and integrity as

12

attorneys to not inflate their claim for attorney's fees. However, if one looks closely at the particular details of this case in comparison to the billing records, the reasonableness of the attorney's fee claims clearly comes into question.

There is no single line item in the records that stands out as grossly excessive. Rather, what stands out is that every single item is for an amount of time in excess of what it would take to do the listed activity. It is necessary to keep in mind that K&M claims to file thousands of these actions. It is also important to remember the very limited amount of evidence and the very simple nature of the complaint in this case. With those things in mind, it becomes easy to question whether each step of the process really took as long as they claimed? For instance, counsel for Defendant, who does not normally practice in federal court, probably spent eighteen minutes reviewing the Court's orders on the scheduling and settlement conferences. But is it credible that Plaintiff's counsel, Mr. Bontrager, who claims to be number two nationally in number of FDCPA lawsuits filed, would spend that amount of time, as he claims he did on January 27, 2010. On January 21, 2010, K&M's paralegal claims it took forty-eight minutes to organize and file a routine FDCPA complaint with no exhibits.[2] As stated above, one can question every single line item in the same manner. The effect of increasing each item over the actual amount of time spent has a large cumulative effect on the final bill.

That cumulative effect can be seen most dramatically if, instead of focusing on the details in the record, one looks at the big picture – what exactly did K&M do on this case? There are no witness interviews, no depositions. Interrogatories were exchanged with Defendant, but as can be seen from the attached exhibits, very little time was spent

---

[2] Plaintiff's Verification, attached to her Complaint, contains an attestation to the accuracy and authenticity of the exhibits attached to the complaint. There are no exhibits attached to the complaint.

13

in responding to Defendant. All forms prepared by K&M, including the complaint and all of its written discovery requests to Defendant, are routine and mostly generic. Except for settlement discussions, reviewing of the file and attendance at the settlement conference (which K&M hired a Denver attorney to attend) there is hardly any attorney involvement. The only document that is not prepared by the paralegal (and then reviewed by Mr. Bontrager for an amount of time equal to what it would take to prepare the document himself) is the attorney's fees petition. That is the only document too important to be trusted to the paralegal. Is $7500.00 a reasonable amount of attorney's fees for that amount of work?

## VII. THE FACT THAT PLAINTIFF RECEIVES ONLY $250.00 IN THIS CASE IS A FACTOR THAT JUSTIFIES A REDUCTION IN THE ATTORNEY'S FEE AWARD.

Plaintiff sought $1000.00 in statutory damages for Defendant's alleged FDCPA violations. Plaintiff has accepted a judgment for $250.00. Plaintiff cites cases for the proposition that courts should not apply a ratio formula that would link attorney's fees with the amount of damages awarded to Plaintiff. Defendant agrees that a ratio formula is not allowed because the court is to award a reasonable amount based upon the facts and circumstances of each case. A formula should be not be relied upon, neither a ratio nor a lodestar.

Although a court should not look solely to the amount of Plaintiff's damages, it can use that amount as a factor in determining the overall reasonableness of the fee award. The Fourth Circuit Court in *Carroll* emphasized that the limited nature of the Plaintiff's award in that case was an important factor justifying a drastic reduction from the lodestar amount requested. The fact that in this case the Plaintiff was awarded only a nominal

amount, less than the amount of the filing fee, is a factor the court should consider when evaluating the reasonableness of Plaintiffs request for an award of attorney's fees.

## VIII. CONCLUSION

Defendant acknowledges that it is not a good use of the court's time to settle disputes over attorney's fees. But in this particular case, attorney's fees are really the reason the action was filed in the first place and have always been the largest part of the controversy. It is appropriate that K&M be, in effect, put on trial and made to prove that they deserve the fee award they claim. In the exercise of its discretion to determine a reasonable attorney's fee award, Defendant asks this Honorable Court to please closely examine how this case originated and was prosecuted by Plaintiff's attorneys, and to either deny entirely or to reduce the amount sought by Plaintiff.

Respectfully submitted:

By: /s/ Paul Spivak
Paul Spivak
1720 S. Bellaire St., Suite 801
Denver, CO 80222
T: 303-691-9570
F: 303-691-9433
paul@contcollections.com

## CERITIFICATE OF SERVICE

The undersigned hereby certifies that on the 27th day of December, 2010 a true and correct copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS** was placed in the U.S. mail, all necessary postage prepaid, addressed as follows, and also said document was electronically filed through the Courts CM/ECF system:

> Niclolas Bontrager
> Krohn & Moss
> 10474 Santa Monica Blvd., Suite 401
> Los Angeles, CA 90025

/s/ Paul Spivak